## *In re* JESSE COOPER.

*Contempt of court.   Habeas corpus.   Supreme court.*

A misapprehension as to the power of a justice of the peace to punish for contempt of court, on the part of one guilty of such an offence, does not furnish sufficient ground for his relief from punishment for such contempt by the supreme court under the the provisions of the act of 1855, No. 7, p. 11.*

One is guilty of a contempt who, in the presence of a court, assails its decisions with sneers, sarcasm or irony.

A writ of *habeas corpus* cannot be issued by the clerk of the county or supreme court during vacation; and when issued in vacation it must be returnable forthwith, and not to a future term of court.

* See post p. 262.

*In re* Jesse Cooper.

HABEAS CORPUS. The petition of the relator was as follows:
" *To the Hon. the supreme court next to be holden at Irasburgh, in and for the county of Orleans, on the first Thursday next after the third Tuesday in August,* 1859.

Your relator, Jesse Cooper, of Irasburgh, in the county of Orleans, would represent that he is now a prisoner in the common jail in Irasburgh, in the county of Orleans, in consequence of a contempt of court alleged and charged to have been committed in a justice court holden by and before Thomas Guild, Esq., a justice of the peace in and for the county of Orleans, at Irasburgh aforesaid, on the 10th day of June, 1857.

Your relator would further state that on the 10th day of June, 1857, James Bergen was on trial before said Thomas Guild, a justice of the peace as aforesaid, and a question was raised by your relator and discussed by the counsel, and after hearing and deliberation the said Justice Guild decided the question. He turned to your orator and remarked: " It might be convenient enough for you, Mr. Cooper, to have the supreme court sit here all the time." To which remark your relator replied: "I don't think that is necessary, for I think this magistrate wiser than the supreme court." To which remark of your relator, the said Thomas Guild instantly replied: "You are fined ten dollars for a contempt of court." No record of any contempt was made by said Justice Guild at the time, nor was anything done other than above stated. There were no charges preferred against your relator, nor was any opportunity allowed him to purge himself of contempt, nor to give any explanation in the matter. Your relator did not intend any contempt of the said Justice Guild, or his court, or his authority, or any of his decisions, or judgments, or his dignity.

At the time the said Guild made the remark to your relator, as above stated, it did not occur to your relator that the object of the said Guild was to irritate and provoke your relator to some act or declaration upon which he could seize as a pretext for imposing a fine upon your relator for contempt, or committing your relator to jail. But your relator then supposed that the said Guild intended said remark as a personal taunt and insult to your relator, and the only object of your relator's reply was

to repel the insult and cast it back upon its author, where he supposed it belonged. It was not the authority of the said justice court, its decisions, judgments or judicial dignity that your relator intended to speak against, and the said contempt was committed by the relator by reason of his ignorance that his reply would be a contempt of any court, unless it should be the supreme court of this State, which contempt the said Thomas Guild could not by law punish; and your relator further saith that he was mistaken, and acted under a misapprehension and mistake in what he said and did, as he is now fully satisfied that the said Thomas Guild in making the aforesaid remark to your relator, acted with a view to aggravate your relator to some act or reply that could be used by him, the said Guild, to gratify his unfounded personal spleen against your relator, in fining and imprisoning your relator for a contempt of his, the said Guild's justice court.

Your relator further saith that there was not for many months, even after your relator was committed to jail, as hereinafter stated, any record made by the said Thomas Guild, justice of the peace, of your relator's condemnation and conviction, and fine for a contempt, nor any memorandum thereof, except a short minute on the complaint and warrant against the said James Bergen, in the hand writing of John H. Prentiss, Esq., in substance that your relator was fined ten dollars for a contempt of court, without any statement of what the contempt consisted of, whether acts, words or declarations, or when, or upon what occasion the same was committed.

Your relator would further state that after the said Justice Guild had announced that your relator was fined ten dollars for contempt of court, the said justice proceeded to try the said James Bergen, and nothing further was said or done to your relator about said contempt until the 27th of October, 1857, when your relator was, by Silas G. Bean, sheriff of Orleans county, arrested and committed to jail for the non-payment of the said fine, and the said Bean, as jailor in and for the county of Orleans, still has the custody of your relator, and restrains him of his liberty, and your relator is now imprisoned and confined in consequence of the contempt of said court and the non-payment of said fine.

*In re* Jesse Cooper.

Your relator would farther state that he acted under a misapprehension and mistake in supposing that when a justice of the peace had rendered a judgment for a fine, and issued a mittimus, and caused the respondent to be committed to jail for non-payment of the fine, that his duties as a justice of the peace ended there. He having shut the party condemned up in jail, it was not for him to go farther; but in this case the said Thomas Guild has not only made it his business to cause the relator to be committed to jail, but has endeavored to intimidate the jailor by threats and menaces of suits and prosecutions, because the jailor in his humanity suffered the relator to come out of the dungeon into open day and fresh air, and even in the kindness of his heart allowed your relator to attend to some little business matters. And your relator is now a prisoner in the common jail in Irasburgh, in the care and custody of the said Silas G. Bean, keeper of said jail, by virtue of a mittimus for the non-payment of said fine of ten dollars, a true copy of which mittimus and the officer's return thereon is hereunto attached. Wherefore the said Jesse Cooper prays that without impairing the rights of any parties concerned, he may in the exercise of the discretion of this court be discharged from said imprisonment and go at large whither he will, without putting the jailor in fear from the threats of any of his accusers who would further persecute him, and that your relator be allowed to file with the clerk of this court, a bond in such sum as the court shall order, with a suitable and proper condition, that the relator will never again state that he thinks the said Thomas Guild wiser than the supreme court.

Dated at Irasburgh Jail, this 2d day of March, 1859.

JESSE COOPER."

The return of the sheriff Bean was substantially the same as that made by him in the case of *Ex parte* Cooper, reported *ante* p. 253, showing that he held the relator in custody under a mittimus issued by Justice Guild for the collection of the fine imposed by him upon the relator for contempt, as above mentioned. Certain affidavits were also taken in the case disclosing, however, no material additional facts to those set forth in the petition.

The relator, *pro se.*

REDFIELD, Ch. J.   This is an application to be relieved from imprisonment for contempt of a justice court, under the statute of 1855.   That statute, sec. 2, provides that if it shall be made to appear that the disobedience or contempt (for which the person is imprisoned) " was committed through ignorance, mistake, or misapprehension, or by acting in good faith under the advice of counsel, and that relief may be granted without impairing the rights of any parties concerned, or the due administration of the law," this court may relieve the party upon such terms as they shall deem proper.

It is obvious that in a case of this kind no rights of other parties are concerned.   For although the justice, as a friend to good order and from personal pride and self respect, may doubtless have some feeling in the matter, and naturally enough desire that his judgment should not, through the connivance of others, be itself treated with disrespect and contempt, and thus brought into ridicule, and although he may urge the officers of the law to the fair and just performance of their duty in the matter, which seems to be one of the relator's grounds of complaint against the justice, still, we cannot regard the justice as any party interested in the enforcement of his judgment, any farther than he may fairly feel an interest that the due administration of the law shall not be impaired ; and we ought, perhaps, also to say, that it does" not seem to us, from the account given by the relator of the conduct of the justice since the commitment, that there is any just ground of complaint against him in that respect.

In regard to our interference in this case being consistent with the due administration of the law, much must depend upon circumstances which might be shown in proof if the court should send the case to a commissioner to report the facts.

If this were a case where the amount of the fine was enormous and altogether beyond the relator's means to pay, which might be the case in a court of unlimited jurisdiction in the matter of fines, and if in such a case the relator had suffered a rigorous confinement within the wards of the inner prison, as the law would seem to require in such cases, the same as in any other case of commitment for non-payment of a fine, so that the punishment had already become such as fairly to answer the just

*In re* Jesse Cooper.

demands of the law, and to produce upon the relator the proper ends of punishment, in submission and penitence, there could be no good ground to fear that the interference of this court in the matter would, in any sense, "impair the due administration of the law."

But in relation to the merits of the case, we are unable to regard it as coming fairly within the general provisions of the statute.    The statute applies only to cases where the contempt was committed through " ignorance, mistake, misapprehension, or in good faith under the advice of counsel."    The only thing in the present case which could fairly be regarded as coming within either of these terms, is the misapprehension of the relator in regard to the power of justice courts to punish for contempt. We have no doubt of a misapprehension in the mind of the relator to this extent.    And until the question was determined by this court, (and as I think upon very sufficient grounds,) there was a difference of opinion among the profession to some extent in regard to that question.    But that is now no longer an open question before this court.    And the relator is again called upon to exercise his forbearance in regard to decisions which he did not regard as law until made.    We cannot regard a mere misapprehension of the law as any ground for the interference of this court under the statute.    We have no occasion to review the proceedings of the justice, having once decided their legality and regularity.    All beyond that belongs exclusively to the court where the contempt was committed.

Perhaps it is just to all concerned to say that the relator, upon his own showing, must have used the words adjudged a contempt in an ironical sense, and intended thus to convert them, by a sarcasm, into a weapon of offence.    This is entirely allowable towards those standing in relations of equality, where no obedience or submission is due.    But in those relations where the law, for any cause, requires submission and obedience, the case is different.    In the relations of parent and child, or teacher and pupil, or the court and its bar, the decisions of the superior, for the time being, are final and are to be respected, whether wise or foolish, in fact.    And they cannot be encountered with sneers and sarcasm, however just and appropriate the weapon may seem

to those who use it, or to others.    The counsel must submit in a justice court as well as in this court, and with the same formal respect, however difficult it may be either there or here.

We ought to say, probably, that we see no evidence of anything wrong on the part of the justice, certainly not amounting to intentional provocation, with any view to draw the relator into a contempt of his court, and thus seek occasion against him.    It is likely enough the relator now believes that, but upon very inadequate proof, as we think.

We do not see that the relator has any alternative left him but submission to what he no doubt regards as a misapprehension of the law, both on the part of the justice and of this court.    And in that respect he is in a condition very similar to many who have failed to convince others of the soundness of their own views, or to become convinced themselves of their fallacy.    Even though vanquished by mere authority, he can argue and is of the same opinion still.    His argument in this case seems to breathe a spirit of respect for, and submission to, the decisions of the constituted tribunals of the State.    It only remains to be known whether his conduct will be made to conform to that spirit, of which, from a long personal acquaintance, I am happy to say I have not the slighest doubt.    It is, perhaps, to be regretted that any such collision should have occurred between counsel and any court.    There does not seem in the case to have been much malice on the part of the counsel, and so far as we can see no fault with the justice, or if any, it consisted in an unwillingness to submit to intentional insult from any quarter, or to any extent, while acting in a judicial capacity.    He will probably find it difficult always to secure that immunity.    It is his right to make the attempt, and he is not to be censured for doing so.    At all events there is ground for difference of opinion, whether, in this country with our free notions in regard to speech, perfect judicial respect can be practically better secured by strict enforcement of legal penalties, than by forbearance and endurance, within certain reasonable limits.

And in regard to the relator, his case, no doubt, seems severe to him, chiefly in consequence of the loose habits of forensic etiquette which almost universally prevail in justice courts, and

because he has before known far greater indignities to pass unpunished. But those of us who profess to live by the law must be content to die by it, or to submit to its penalties, and to console ourselves by the reflection that it is no legal ground of exception to punishment because others go unpunished for more flagrant offences.

II. Lest this case might be drawn in precedent, we ought to say that it seems to be an anomaly in practice for the clerk to issue a writ of *habeas corpus* in vacation, which might be returnable one year from date. The statute is explicit that the writ shall issue from the court "during its sitting, or by any judge thereof during vacation." Sec. 3 provides that the writ "shall in all cases be made returnable forthwith." Sec 6. provides that if the court shall adjourn before the writ is returned, it shall be returned before any of the judges. Sec. 15 provides that the case shall be heard "without delay." It is obvious it could never have been contemplated that the writ should be issued by the clerk in vacation, returnable in term. And the expression in this statute that the party shall be entitled to his writ returnable to the supreme court, is not intended to alter the course of proceedure, we apprehend.

Respondent remanded to former custody, and petition dismissed.