NATHAN S. BEARDSLEE et al., as Receivers of the NATIONAL SALT COMPANY, Respondents, v. GEORGE S. INGRAHAM, Appellant, Impleaded with Another.

1. ATTACHMENT — UNITED STATES CIRCUIT COURT. Where a warrant of attachment issued by a Circuit Court of the United States against the property of a corporation, the defendant in an action brought in that court, and such attachment has been duly filed in the office of the clerk of the court in the district in which the property of the defendant is situated, the real estate of the defendant is constructively in the custody of such court until the attachment has been vacated by a Federal court of competent jurisdiction.

2. CONFLICT OF LAW — WHEN NEW YORK SUPREME COURT HAS NO JURISDICTION TO RESTRAIN SALE UNDER ATTACHMENT ISSUED BY UNITED STATES CIRCUIT COURT. Where such attachment was issued by the Federal court and filed before the commencement of an action brought in the Supreme Court of the state of New York for the dissolution of the corporation, in which action receivers were appointed to take possession of the property of the corporation and sell it at public auction, the latter court has no authority or jurisdiction, in an action brought therein by such receivers, to restrain a United States marshal from proceeding to sell, under an execution, the real property of the corporation covered by the attachment, or to enjoin the plaintiff in the Federal action from proceeding in the Federal courts to enforce such attachment, thereby drawing to itself the determination of the validity of the procedure in the Federal court; since it is for the Circuit Court of the United States and not for the Supreme Court of New York to determine whether the levy of such attachment is valid or not.

3. REAL PROPERTY — CLOUD UPON TITLE, ACTION TO REMOVE — WHEN COMPLAINT THEREIN INSUFFICIENT TO SUPPORT INJUNCTION TO RESTRAIN SALE UNDER ATTACHMENT. An allegation in the complaint in the action in which the injunction was granted by the New York Supreme Court that the warrant of attachment did not create a lien against the

lands sought to be sold by the marshal, because it was not filed in the office of the clerk of the county in which the lands are situated, will not, even if established by the evidence, support an injunction, where the action was brought to remove the attachment as a threatened cloud upon the title to the lands of the corporation; since, to sustain such action and justify the granting of the injunction therein, it must appear that the proceedings attacked are not void upon their face and that their nullity would not be manifest upon the proof produced in support of the proceedings.

*Beardslee* v. *Ingraham*, 106 App. Div. 506, reversed.

(Argued January 9, 1906; decided January 23, 1906.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 7, 1905, which affirmed an order of Special Term granting a motion for an injunction *pendente lite.*

The material facts alleged in the complaint upon which the injunction was granted are as follows: On September 29, 1902, in a suit in the Court of Chancery in the state of New Jersey, a decree was made adjudging the National Salt Company, a corporation organized under the laws of that state, to be insolvent, and appointing Nathan S. Beardslee and Frank P. McDermott (the plaintiffs in the present action) permanent receivers to take possession of all lands and other property belonging to said corporation and to wind up its affairs. On October 1, 1902, in an action in the Supreme Court of the state of New York, the same persons were appointed receivers of all the property and assets of the National Salt Company in the state of New York, this appointment being made in support of and ancillary to the appointment of said receivers by the Court of Chancery in New Jersey. The receivers thereafter duly qualified and took possession of all the real and personal property belonging to the corporation in the state of New York. On March 14, 1904, an order was made in the New York action in which the receivers were appointed authorizing and directing them to sell at public auction on May 25, 1904, the properties of the National Salt Company, including the property in controversy in the present action. Such properties were sold in accordance with the terms of the

order to one Edward L. Fuller, and on July 27, 1904, an order confirming the sale was made and entered in the action in which the receivers were appointed. The sale has not yet been perfected, however, and the title to the property still remains in the receivers.

Prior to any of these proceedings, either in the Court of Chancery of New Jersey or the New York Supreme Court, George S. Ingraham, one of the defendants in the present suit, brought an action in the New York Supreme Court against the National Salt Company to recover $12,495.00. This suit was subsequently removed to the Circuit Court of the United States for the eastern district of New York. On November 6, 1901, a warrant of attachment was issued in said action out of the Circuit Court of the United States for the eastern district of New York, which warrant was, on November 14, 1901, filed in the office of the clerk of the Circuit Court of the United States for the western district of New York, in the city of Buffalo; and an amended notice of the attachment was filed in the same office on December 2, 1901. No notice of this attachment has been filed in the office of the clerk of the county of Wyoming, in which is situated the property sought to be affected by the attachment. On August 9, 1904, George S. Ingraham obtained a judgment in his action against the National Salt Company in the Circuit Court of the United States for the eastern district of New York; an appeal from such judgment is now pending in the United States Circuit Court of Appeals for the second circuit. William R. Compton, the United States marshal for the western district of New York, assuming to act under the said warrant of attachment (and presumably under the execution issued thereunder), advertised for sale at public auction on April 4, 1905, at the court house in the village of Warsaw, in the county of Wyoming, all the right, title and interest which the National Salt Company had on December 2, 1901, in and to said real estate situated in said county.

The complaint further alleges that no valid lien has been acquired under the attachment by reason of the failure to file

a notice of the same in the office of the clerk of the county of Wyoming, under section 649 of the Code of Civil Procedure, which Code had been adopted by the United States Circuit Court for the eastern district of New York as the law under which attachments issued out of said court should be governed. It avers that no valid levy has been made under the warrant of attachment, that the threatened sale of the property by the marshal is illegal and unauthorized, and, if allowed to be made, will throw a cloud upon the title of the receivers and involve them in expensive and protracted litigation with their purchasers, and that they have no adequate remedy at law in the premises. A preliminary injunction was, therefore, prayed for, forbidding Mr. Ingraham or the marshal from selling or attempting to sell the premises, and from interfering in any way with the property, together with a temporary injunction during the pendency of the action. This was the sole prayer for relief.

It also appeared by affidavit that the receivers were authorized by order of the state Supreme Court to apply upon the purchase of the properties sold by them to Fuller a claim of $283,504.60 on his behalf against the National Salt Company, in part payment, and were directed by said order to deliver possession of the said properties forthwith to the said Fuller, the title, however, to remain in the receivers until he had made payment of the balance of the purchase price; and that the receivers have accordingly delivered to Fuller the possession of the properties.

A preliminary injunction was granted in accordance with the prayer of the complaint, and was continued at Special Term, and the order continuing the same was affirmed at the Appellate Division by a divided court. The questions certified by the Appellate Division are as follows: 1. Has the Supreme Court of the State of New York jurisdiction to enjoin a United States marshal from proceeding to a sale on execution? 2. When an attachment is filed by a plaintiff in the clerk's office of the Federal court against certain real estate belonging to a defendant corporation, does the later

appointment, by the New York Supreme Court, of receivers of such defendant corporation authorize said Supreme Court to enjoin the plaintiff in the Federal action from proceeding in the Federal court to there enforce the attachment, and authorize said Supreme Court to draw to itself the determination of the validity of the procedure in the Federal court?

*George S. Ingraham,* appellant, in person. The state court was without jurisdiction to restrain the proceedings in the United States court, or to determine the validity and effect of the attachment or execution under said Federal judgment. (*C. Nat. Bank* v. *Hazard,* 49 Fed. Rep. 293; *Strozier* v. *Hones,* 30 Ga. 578; *Chapin* v. *James,* 11 R. I. 86; *Matter of Debs,* 158 U. S. 564; *Ex parte Holman,* 28 Iowa, 88; *Mead* v. *Merritt,* 2 Paige, 402; *Dorr* v. *Robe,* 82 Va. 359; *C. Nat. Bank* v. *Stevens,* 169 U. S. 432; *Willets* v. *Waite,* 25 N. Y. 577.) The Federal court has the right and power to carry its own judgments into execution. To take from it the prerogative of executing its own judgments by supplemental proceedings is an unlawful attempt to cripple its jurisdiction is a most essential matter. (*Riggs* v. *Johnson Co.,* 6 Wall. 166.) As this case involves the construction of the United States statute, the Federal court alone should decide the questions involved. (U. S. R. S. § 915; *Freeman* v. *Howe,* 24 How. [U. S.] 450; *Ableman* v. *Booth,* 21 How. [U. S.] 506.) The service of the summons and the attachment in the Federal court, prior to the appointment of a receiver in the state court, gave the Federal court the paramount jurisdiction to enforce its own judgment, without regard to the subsequent proceeding appointing a receiver in the state court. It was the right and duty of the Federal court to enforce its own process. (*Riggs Case,* 6 Wall. 166; *H. Co.* v. *B. Co.,* 132 Mo. 442; *Owens* v. *C. R. Co.,* 20 Fed. Rep. 10; *Moran* v. *Sturges,* 154 U. S. 256; *H. Ins. Co.* v. *Howell,* 24 N. J. Eq. 238; *Harkrader* v. *Wadley,* 172 U. S. 148; *Colston* v. *S. H. B. & L. Assn.,* 99 Fed. Rep. 305; *U. T. Co.* v. *R., R. I. & S. L. R. R. Co.,* 6 Biss. 197.) The receivers' contention is that the

attachment is void. By this contention they throw themselves out of court, for the following reason : It is well settled that the court will not grant relief to prevent a threatened cloud on title, where the proceedings on their face are void, as the receivers here contend. (High on Injunctions [3d ed.], § 249 ; *N. P. Assn.* v. *Lloyd*, 167 N. Y. 431.) If plaintiff attaches property in one court he cannot be enjoined from enforcing the same by another court. (Drake on Attach. [7th ed.] § 625 ; *Wallace* v. *M'Connell*, 13 Pet. 136 ; *Minchin* v. *S. Nat. Bank*, 36 N. J. Eq. 436 ; 2 Wade on Attach. 493.)

*Edmonds Putney* and *Henry B. Twombly* for the respondents. This court has the exclusive jurisdiction to administer the assets of the National Salt Company in this state, and both can and will resist any interference by another court with the property in its custody which would operate to disturb or prevent the exercise of that jurisdiction. (*Rodgers* v. *Pitt*, 96 Fed. Rep. 668 ; *Herdritter* v. *E. O. C. Co.*, 112 U. S. 294 ; *Schuehle* v. *Reiman*, 86 N. Y. 270 ; *Matter of S. T. B. Co.*, 136 N. Y. 169 ; *Van Camp* v. *Searle*, 79 Hun, 134 ; *Matter of Tyler*, 149 U. S. 164 ; *Peck* v. *Jenness*, 7 How. [U. S.] 612 ; *Wiswall* v. *Sampson*. 14 How. [U. S.] 52 ; *Matter of H. & S. Co.*, 73 Fed. Rep. 527.) This court, having possession of the property of the National Salt Company, has jurisdiction to inquire into the legality of any claim sought to be enforced against it. (*Ledoux* v. *Labee*, 83 Fed. Rep. 761 ; *Metcalf* v. *Barker*, 187 U. S. 165 ; *Ridge* v. *Manker*, 132 Fed. Rep. 599 ; *F. L. & T. Co.* v. *L. S. R. R. Co.*, 177 U. S. 51.) The warrant of attachment and notice in the action of *Ingraham* v. *The National Salt Company* never having been filed in the office of the clerk of Wyoming county, did not create a lien against the property sought to be sold. (U. S. L. 1872, ch. 255, §§ 5 and 6 ; *S. S. Cutter* v. *Jones*, 13 Fed. Rep. 567 ; *Logan* v. *Goodwin*, 164 Fed. Rep. 490 ; *Bates* v. *Davis*, 17 Fed. Rep. 167 ; *Richmond* v. *Brookings*, 48 Fed. Rep. 241 ; *Brooks* v. *Fry*, 45 Fed. Rep. 776 ; *Citizens' Bank* v. *Farwell*, 56 Fed. Rep. 570.)

WILLARD BARTLETT, J.   An injunction against a United States marshal, forbidding him from selling under an execution issued out of the Circuit Court of the United States, is in effect an injunction against the Federal tribunal itself. (*Central National Bank* v. *Stevens*, 169 U. S. 432, 463, and cases there cited.)   In that case a part of the decree of the state court under review sought to restrain the complainants in a suit in the United States Circuit Court from proceeding under the final decree of sale in the United States Circuit Court and from enforcing the other remedies adjudged to them by that decree.   The granting of this injunction was condemned as erroneous by the Supreme Court of the United States.   " The injunction," said Mr. Justice SHIRAS, who wrote the opinion of the court,  " was a plain interference with the proceedings in another court which had full and complete jurisdiction over the parties to the subject-matter of the suit, and which jurisdiction had attached long before the suit in the Supreme Court (of the State) had begun." State courts are expressly declared to be destitute of all power to restrain either the process or proceedings in the national courts.   The general rule that there is no authority in the state courts to enjoin proceedings in the courts of the United States is laid down as distinctly as a judicial proposition can be declared and the correctness of the conclusion finds ample support in the authorities cited. (See *Peck* v. *Jenness*, 7 How. [U. S.] 612, 624; *Riggs* v. *Johnson County*, 6 Wall. 166; 2 Story's Equity Jur. § 900; *Moran* v. *Sturges*, 154 U. S. 256.)   In the case last cited (which was a reversal of *Matter of Schuyler Steam Tow-Boat Co.*, 136 N. Y. 169), the question was whether it was within the power of a state court to restrain the libellants in a District Court of the United States from prosecuting their libels, and the chief justice declared the general rule to be " that State courts cannot enjoin proceedings in the courts of the United States," and reviewed a large number of authorities sustaining that doctrine.

Furthermore, it is " a rule of general application that where

property is in the actual possession of one court of competent
jurisdiction, such possession cannot be disturbed by process
out of another court." (*Moran* v. *Sturges, supra,* on p. 274.)
This proposition is stated by Chief Justice FULLER to have
been repeatedly affirmed by the Supreme Court of the United
States, and was perhaps most clearly and explicitly enunciated
by Mr. Justice MATTHEWS in *Covell* v. *Heyman* (111 U. S.
176) in explaining the questions decided in *Freeman* v. *Howe*
(24 How. [U. S.] 450). His language is as follows : " The
point of the decision in *Freeman* v. *Howe* (*supra*) is that
when property is taken and held under process, mesne or
final, of a court of the United States, it is in the custody of
the law, and within the exclusive jurisdiction of the court
from which the process has issued, for the purposes of the
writ; that the possession of the officer cannot be disturbed by
process from any state court, because to disturb that possession
would be to invade the jurisdiction of the court by whose
command it is held, and to violate the law which that juris-
diction is appointed to administer; that any person, not a
party to the suit or judgment, whose property has been
wrongfully, but under color of process, taken and withheld,
may prosecute, by ancillary proceedings, in the court whence
the process issued, his remedy for restitution of the property
or its proceeds while remaining in the control of that court;
but that all other remedies to which he may be entitled
against officers or parties, not involving the withdrawal of
the property or its proceeds from the custody of the officer
and the jurisdiction of the court, he may pursue in any tribu-
nal, state or Federal, having jurisdiction over the parties and
the subject-matter.   And *vice versa*, the same principle pro-
tects the possession of property while thus held, by process
issuing from state courts, against any disturbance under process
of the courts of the United States ; excepting, of course, those
cases wherein the latter exercise jurisdiction for the purpose
of enforcing the supremacy of the Constitution and laws of
the United States."

The attachment which Mr. Ingraham sued out in the Circuit

Court of the United States antedated any proceedings in the suit in the Supreme Court of this state which resulted in the appointment of the receivers. Assuming that there was a sufficient and legal levy of this attachment by filing it in the office of the clerk of the United States Circuit Court for the western district of New York, such levy was effective to give to the Federal tribunal exclusive jurisdiction of the property, which could not be disturbed by the state courts, if a levy of an attachment upon real estate brings the property to which it relates constructively into the custody of the tribunal out of which the warrant is issued. The proposition of law which appears to have led the courts below to sustain the injunction under review, is that the levy of an attachment upon real estate gives to the court from which the process issues neither actual nor constructive possession of the property; and hence that the court has not acquired such custody of the property, by virtue of the attachment, as to prevent its lawful seizure by the receivers of another court. This doctrine finds support in a decision rendered in 1896 by a district judge of the United States sitting alone in the Circuit Court for the southern district of California. (*In re Hall & Stillson Co.*, 73 Fed. Repr. 527.) It was adopted in order to uphold the title of receivers appointed by a Federal tribunal as against the claim under a levy of attachment issued out of a state court. The learned judge conceded that so far as personal property was concerned, taken by the sheriff under the levy of the attachment, his title was superior to that of the receiver; but he held that the same rule did not apply to real estate, inasmuch as the attachment gave only a lien upon the lands, without any apparent right to possession.

I can see no logical reason for making an attachment under such circumstances effective to oust the jurisdiction of another court in the case of personal property, but ineffective to oust such jurisdiction in the case of real property. The purpose of the law is the same in both cases — to secure an appropriation of the attached property to the satisfaction of the plaintiff's claim in the event that he recovers judgment. I cannot

find in the law of attachment anywhere any indication of an
intent to make this remedy available to a plaintiff in case of
personal property, so as to prevent its seizure by subsequent
proceedings in another court, and to refuse the remedy in the
case of real estate. No such intent can be reasonably inferred
from the fact that the officer executing the process is not
required or permitted to take actual possession of the land.
By procuring the notice of attachment to be filed in the pre-
scribed office the plaintiff has done what the law requires to
entitle him to have the land applied to the satisfaction of the
judgment, if he subsequently obtains a judgment. He accom-
plishes no more than this with reference to personal property,
by the actual seizure of personal property under the levy of
an attachment thereon; and it seems to me that, so far as any
question of jurisdiction is concerned, the real estate, upon
which an attachment has been levied, issued out of a Federal
court, should be deemed to be constructively in the custody
of that court for the purposes of the rule laid down by the
Supreme Court of the United States in *Central National
Bank* v. *Stevens, Moran* v. *Sturges,* and the other cases which
have been cited.

In addition to *Matter of Hall & Stillson Co.* (*supra*) the
courts below seem to have relied largely on *Wiswall* v. *Samp-
son* (14 How. [U. S.] 52). In that case there was an attempt
by the plaintiff in ejectment to obtain possession of land
under judgments of the Circuit Court of the United States
entered in 1840. There were levies by execution on these
judgments in February and April, 1845, a sale under execu-
tion and a deed executed to the purchaser in August, 1845.
The defense was based on a deed given on a sale of the land
in 1847 by a receiver of the Alabama Court of Chancery,
who had been in possession of the property since June 27,
1845, by virtue of a decree rendered in April, 1845, in a suit
begun in 1843. While the judgments under which the plain-
tiff claimed were prior to the institution of the chancery suit
in 1843, the levy under them was subsequent to the filing of
the bill in the chancery suit, but prior to the appointment of

the receiver. The Supreme Court of the United States held that the plaintiff in ejectment had obtained no title inasmuch as at the time of the sale under the executions, the Alabama Court of Chancery was in possession of the premises by its receiver. The view of the court seems to have been that the appointment of the receiver related back to the time of the filing of the bill in the chancery suit, which was prior to the levy of the executions under the plaintiff's judgments. While this case seems to support to some extent the position of the respondent, the case at bar is distinguishable from it in one respect which seems to me essential. Here there was no filing of any bill in the suit in which the receivers were appointed by the state court before the levy of the attachment in the suit of Mr. Ingraham in the United States Circuit Court — the action was not begun until long after the attachment had issued out of the Federal court. If in *Wiswall* v. *Sampson* it had appeared that the levy of the judgments obtained in the Federal court had been prior to the filing of the bill under which the receiver was appointed by the state court, it seems to me that it would hardly have been held that such levy was interrupted by the filing of the bill and the appointment of the receiver.

The basis of the decision in *Wiswall* v. *Sampson* seems to have been that in a suit of such a nature as that in which the receiver was appointed by the Alabama Court of Chancery (a suit to set aside conveyances of land as fraudulent), *jurisdiction attached at the time of the filing of the bill*, and hence remained paramount in the state court until decree. The doctrine involved was the same as that asserted in *Farmers' Loan, &c., Co.* v. *Lake St. El. Railroad Co.* (177 U. S. 51), where it was held that the filing of the bill in a mortgage foreclosure suit in the Circuit Court of the United States disabled an Illinois state court from proceeding with a suit instituted therein to prevent the foreclosure of the mortgage, in which suit the summons was served before the writ of subpœna in the Federal court, although not until after the bill therein had been filed. " As between the immediate parties,"

said the court, " in a proceeding *in rem*, jurisdiction must be regarded as attaching when the bill is filed and process has issued, and where, as was the case here, the process is subsequently duly served, in accordance with the rules of practice of the court." Referring to the rule that the possession of the *res* vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising like powers, Mr. Justice SHIRAS observed : " Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts or liquidate insolvent estates and in suits of a similar nature where in the progress of the litigation the courts may be compelled to assume the possession and control of the property affected."

If the view which has been taken of the scope and effect of the decision in *Wiswall* v. *Sampson* be correct, that case is not an authority in favor of the respondents. It may be noted that this court, in *Chautauque County Bank* v. *Risley* (19 N. Y. 369, 376, 377), refused to follow it if construed as denying the validity of a title acquired by sale under a judgment which was a legal lien upon the land sold prior and paramount to the title or possession of a receiver. In the opinion of the learned Appellate Division it is said that the doctrine of the *Chautauque Co. Bank* case in this respect was repudiated in *Walling* v. *Miller* (108 N. Y. 173), but I can find no reference in the opinion therein to the former case. Although in *Walling* v. *Miller* this court did hold that a sale of property made under an execution, without leave of the court, while the property was in the possession of a receiver, was illegal and void notwithstanding that the execution had been levied before the appointment of the receiver, the question presented here, whether proceedings under an execution relating back to an attachment levied before the

appointment of receivers can be restrained by an equity suit subsequently instituted in another tribunal, was not involved or decided.

An application was made by Mr. Ingraham in this litigation for an order staying the receivers to the Circuit Court of the United States in Brooklyn. Judge THOMAS felt constrained to deny the application in view of the decision of a brother judge of like jurisdiction in *Matter of Hall & Stillson Co.* (*supra*), but he pointed out in the following clear and comprehensive language the results which would flow from a final adoption of the doctrine of that decision: "The consequence of the holding, as applied to the case at bar, is, that a state court may, in a suit later begun, appoint receivers of the land previously attached in an action in the Federal court, draw to itself the power to stay the enforcement of prior processes of the Federal court, and decree their validity or invalidity, or postpone the satisfaction of the decree by virtue of such attachment, to await the disposition of the property for the purposes for which it was seized by the state court. Hence, all levies on land by attachment or execution become subjected to the after-acquired jurisdiction of another tribunal. The Federal court in the action at bar appointed and appropriated the land to the payment of such judgment for money damages as it should direct to be entered. The state court has intervened and stayed such payment, until it shall have determined the validity of the attachment and the levy thereunder, whereupon, according to the receivers' contention, it may distribute the property of the judgment debtor to whomsoever it finds entitled to the same. If the state court has this power, the Federal court is deprived not only of the control of its processes but also of power to determine whether they are valid and may be enforced. Thus, the court of one sovereignty is compelled to yield its powers to the commands of a foreign tribunal, taking later cognizance of the property that has been subjected to the exercise of the powers of this court."

I do not think that we should sanction any rule which will

result in such consequences unless compelled to do so by authority. If I am right in the foregoing discussion, it is for the Circuit Court of the United States and not for the Supreme Court of New York to determine whether the levy of the attachment sued out by Mr. Ingraham is valid or not. "It is a doctrine of law too long established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court." (*Peck* v. *Jenness,* 7 How. [U. S.] 612.)

The respondents insist that the warrant of attachment did not suffice to create any lien against the property sought to be sold by the marshal, because it was never filed in the office of the clerk of Wyoming county in which such lands are situated. This proposition, if correct, does not help them to sustain their injunction. The gist of their cause of action is the apprehension that a sale under an execution relating back to the attachment will throw a cloud upon their title. But, in order to maintain an action to remove an alleged cloud upon title, it must appear that the proceedings attacked are not void upon their face and that their nullity would not be manifest upon the proof which a claimant under such proceedings would be compelled to make in support of his claim. (*Clark* v. *Davenport,* 95 N. Y. 477.) The same principles obtain in a suit to prevent a threatened cloud upon title. Here, however, the conditions essential to the maintenance of such a suit do not exist. If Mr. Ingraham's attachment was not effectively levied, that fact would necessarily appear in proof upon any attempt to establish the existence of a lien by virtue of the issue and levy of the warrant. Hence, the complaint does not state facts sufficient to support an action to prevent a cloud upon the respondents' title, even if it be assumed that the attachment was not levied as required by

law, and no injunction should be granted on a complaint of this character.

Each of the questions certified is somewhat broader in its scope than is warranted by the papers on which the appeal is based. The first question, "Has the Supreme Court of the State of New York jurisdiction to enjoin a United States Marshal from proceeding to a sale on execution," if regarded as limited by the addition of the words "under the circumstances of this case," should be answered in the negative. The second question should also be answered in the negative provided it be qualified so as to show that the later appointment by the New York Supreme Court of the receivers of the corporation was in a suit instituted subsequent to the filing of the attachment.

The order continuing the injunction should be reversed, with costs in all courts, and injunction vacated, and both questions, when limited as above indicated, answered in the negative.

CULLEN, Ch. J., O'BRIEN, HAIGHT, VANN, WERNER and HISCOCK, JJ., concur.

Order reversed, etc.