C. G. CHALMERS

*vs.*

A. S. LITTLEFIELD, S. T. KIMBALL AND J. E. MOORE.

Knox.    Opinion December 14, 1907.

*Railroad Mortgages.    After-Acquired Property.    Receivers.    Actions against, not maintainable, when.    U. S. Bankruptcy Act, 1898, section 4b, Statute 1905, chapter 85.    R. S., chapter 52, sections 32, 59; chapter 53, sections 18, 24; chapter 83, section 27.*

Where, after a street railway corporation with a franchise for a street railway had been duly organized and a copy of the survey and location of its route had been filed with the railroad commissioners, it proceeded to purchase land for a power house and to make arrangements for rights of way over private property wherever the location was outside of the highway, and subsequently executed a mortgage of its franchise and all its property, real and personal, then existing and thereafter to be acquired, including roadbed and materials and equipment of every kind, to secure an issue of bonds which were afterwards issued, and the mortgage contained a description of the route of the road as located, by courses and distances, and which said mortgage had been duly recorded both in the registry of deeds in the county and in the town where the railway was wholly located, *Held:*  That it was not necessary that the corporation should have been actually possessed of tangible property, at the time the mortgage was given approximating in value the amount of the bonds which the mortgage was given to secure in order that an express provision therefor in the mortgage might be legally operative to include subsequently acquired property.    Such a requirement would defeat the principal purpose for which such a mortgage is given, which is for the purpose of procuring the necessary funds for the construction and equipment of such railway, and it would be a self-destructive provision that would require such railway fully constructed and equipped as the only legal basis of such a mortgage.

In the case at bar, the defendants were the receivers of the Rockland, South Thomaston & Owl's Head Railway, a corporation.    The plaintiff brought an action of trover against the defendants for the alleged conversion of

certain steel rails which were a part of a quantity purchased by the corporation for use in the construction of its street railway. The defendants were appointed receivers of the corporation prior to the alleged conversion and these steel rails had come into their possession as a part of the property of the corporation and had been used by them in completing the railway. Previous to the appointment of the defendants as receivers, the plaintiff in an action of assumpsit against the corporation had attached the steel rails alleged to have been converted by the defendants, and on a judgment obtained after the appointment of the defendants as receivers, and without leave of court, the attached rails were seized and sold on the execution issued on the judgment the plaintiff being the purchaser of the rails at the execution sale. The action of trover also was brought against the defendants without permission of the court. Prior to the plaintiff's attachment of the rails in his action of assumpsit, the corporation had executed a mortgage of its franchise and all its property, real and personal, then existing and thereafter to be acquired, including roadbed and material and equipment of every kind, to secure an issue of bonds, which were afterwards issued, and which said mortgage was duly recorded. Also prior to the plaintiff's judgment and the sale on execution in his action of assumpsit, equity proceedings were instituted praying for a foreclosure of the mortgage and the appointment of a receiver and thereupon the defendants were appointed receivers of the corporation and took possession of all the property of the corporation including the rails which, as aforesaid, were used by them in completing the railway.

*Held:* (1) That the defendants were legally appointed receivers of the corporation.

(2) That while the action of trover was brought against the defendants as individuals, yet whatever was done by them in using the rails in completing the street railway, was done by them in their capacity as receivers and not as individuals.

(3) That the mortgage was a valid mortgage and included the after-acquired property.

(4) That the rails alleged to have been converted by the defendants, were included in the description of after-acquired property in the mortgage.

(5) That the rails alleged to have been converted by the defendants legally passed into the custody of the defendants as receivers and were thus in the custody of the law.

(6) That the plaintiff without leave of court had no authority to seize and sell the rails on execution issued on the judgment, in his action of assumpsit, which was taken after the receivers were appointed and such a sale has no validity and passes no title. Property in custodia legis is not thus subject to seizure and sale on execution.

(7) That when property is lawfully in the hands of a receiver, a suit therefor cannot be brought against the receiver except by leave of court.

On report.    Judgment for defendants.

Action of trover brought against the defendants as individuals for the alleged conversion of 136 steel rails of the aggregate value of $1440.    These rails were a part of a quantity purchased by the Rockland, South Thomaston & Owl's Head Railway, a corporation, for use in the construction of a street railway from the Rockland line to Crescent Beach and Owl's Head.

The plaintiff claimed title to the rails and the right to recover in his action of trover by virtue of an attachment of the rails in an action of assumpsit brought by him against the aforesaid corporation and a sale of the same on the execution which issued on the judgment in his action of assumpsit, the plaintiff being the purchaser of said rails at the execution sale.    The plaintiff's attachment of the rails in his action of assumpsit was made July 12, 1904, judgment rendered at the April term, 1906, of the Supreme Judicial Court, Knox County, execution issued May 26, 1906, and sale of the rails on execution was made June 14, 1906.

The pleadings filed by the defendants as shown by the "agreed statement of pleadings" were as follows :

"On second day of return term defendants filed a statement that they were receivers, duly appointed by the court and setting out the bills in equity under which they were appointed, and that the property sued for came into their hands as part of the property of the railway, and that they used a portion of it in completing the railroad under order of court; that plaintiff's judgment was taken after their appointment, and whatever was done by defendants was done as receivers and not as individuals and asked that no further proceedings in this case be allowed in this court, and said cause be dismissed, upon which no ruling was made.

"At the trial term defendants pleaded general issue, and by brief statement set up same as in the statement filed at first term, and further that this suit was brought without leave of court."

Plaintiff and defendants agreed upon the following statements "in lieu of documents :"

"That the Town of South Thomaston executed and delivered a deed of two acres of land, being a portion of the Town Farm in

South Thomaston, to said company for station purposes, dated Sept. 30, 1903, recorded Oct. 3, 1903.

"That the Rockland, South Thomaston & Owl's Head Railway executed and delivered to the Federal Trust Company of Boston, a mortgage of all its property and franchise real and personal then owned or hereafter to be acquired by it, therein describing the route of said road by courses and distances for security of the bonds of said Railway, dated Oct. 1, 1903, recorded in Knox Registry, Oct. 3, 1903, Vol. 127, Page 458, and in the Town Clerk's office at South Thomaston, Oct. 1, 1903.

"That a bill in equity was filed, March 27, 1906, by M. A. Johnson, therein claiming to be the owner of $38,000, par value of the bonds of said company, and praying for a foreclosure of said mortgage.

"That A. S. Littlefield, as counsel for said company, filed an answer the same day.

"That on said March 27, 1906, Thomas McGaffrey of Boston, filed a bill against said corporation, and said company filed an answer signed by A. S. Littlefield as counsel for said company.

"That on the same day A. S. Littlefield and S. T. Kimball were appointed by the court receivers of said railway corporation.

"That said bill of M. A. Johnson was amended, on his motion, by a decree of the court June 11, 1906, so as to substitute the Federal Trust Company as plaintiff instead of M. A. Johnson, in the bill filed by him, and J. E. Moore was thereupon appointed a receiver, to act as such with said Littlefield and Kimball. Said receivers were duly qualified and gave bond as required by said decree."

Tried at the April term, 1907, of the aforesaid Supreme Judicial Court. At the conclusion of the evidence the case was "reported to the Law Court for decision upon so much of the evidence as would be legally admissible if seasonably objected to, the Law Court to render such judgment as the law and the legal evidence require."

The case appears in the opinion.

*D. N. Mortland*, for plaintiff.

*S. T. Kimball, Arthur S. Littlefield and Joseph E. Moore*, for defendants.

SITTING : EMERY, C. J., WHITEHOUSE, STROUT, PEABODY, CORNISH, KING, JJ.

WHITEHOUSE, J.   This is an action of trover brought against the defendants for the alleged conversion on July 1, 1906, of 136 steel rails of the aggregate value of $1440.   These rails were a part of a quantity purchased by the Rockland, South Thomaston & Owl's Head Railway, for use in the construction of a street railway from the Rockland line to Crescent Beach and Owl's Head.

The plaintiff claims title to the rails and the right to recover in this action by virtue of an attachment in an action of assumpsit brought by him against the corporation July 12, 1904, and a sale June 14, 1906, on the execution which issued on the judgment in that case.

The defendants deny that the plaintiff acquired any title to the rails by force of his attachment thereof and sale on execution, and justify their acts on the ground that prior to the alleged conversion by them, they had been duly appointed by the court, receivers of the corporation, and that the rails sued for came into their possession as a part of the property of the railway.

It appears that the plaintiff's judgment in the action of assumpsit in which his attachment was made, was not taken until after the appointment of the defendants as receivers, and although this action of trover is brought against them as individuals, it is not in controversy that whatever was done by them in using the rails for the construction of the railroad, was done by them in their capacity as receivers and not as individuals.

After the company had been duly organized and a copy of the survey and location of its route had been filed with the railroad commissioners, it proceeded to purchase land for a power house and to make agreements for rights of way over private property wherever the location was outside of the highway ; and subsequently on October 3, 1903, the corporation executed a mortgage to the Federal Trust Company of Boston, of its franchise and all its property, real and personal, then existing and thereafter to be acquired, including roadbed and material and equipment of every kind, to

secure an issue of bonds to the amount of $175,000, which were afterwards issued. The mortgage contained a description of the route of the road as located, by courses and distances.

It is not in controversy that thereupon materials for the construction of the road were purchased, the roadbed graded and ties and rails laid nearly the entire length of the road from Rockland line to Crescent Beach, and the road so nearly completed that it was accepted by the railroad commissioners in 1904 to within about a quarter of a mile of its present terminus, and rails and ties were laid further on to Crescent Beach. In the progress of this work, poles, wire and rails had been delivered and laid along the side of the road as far as Crescent Beach for future use in building the road, and among the materials were the rails sued for in this case.

At the time the property of the corporation thus came into the actual possession of the receivers, all of the rails in question taken by them were lying on private lands in close proximity to the railroad location where they were originally deposited when purchased by the officers of the corporation. They did not appear to be in charge of any keeper appointed by the officer making the attachment, nor was any actual change made in their location or custody at the time of the sale on the execution. The rails were from 24 to 30 feet in length and weighed 60 pounds to the yard, and the officer appears to have treated them as property which by reason of its bulk could not be immediately removed, (R. S., chap. 83, sec. 27) and sought to preserve the attachment by filing a copy of his return in the town clerk's office.

But in consequence of financial embarrassment, a bill in equity was filed in this court March 27, 1906, praying for a foreclosure of the mortgage above described and the appointment of a receiver. The Federal Trust Company, the mortgagee therein named, was duly admitted as a party plaintiff to this bill and the defendants having been appointed receivers of the corporation, made written demands upon its officers for possession of its property, and with the express consent of these officers took possession of all its property including the rails in question. By virtue of a decree of the court authorizing and directing them so to do, the receivers pro-

ceeded to complete the road to Crescent Beach and for that purpose used a portion of the rails in question which were placed beside the road for that purpose. The defendants accordingly contend that this action of trover is not maintainable, first, because any lien created by the plaintiff's alleged attachment of the rails in question was not preserved by the appointment of a keeper to maintain possession of the property. Second, because the property was covered by the terms of the mortgage and legally passed into the custody of the receivers and no action could be maintained against them without permission of the court.

Upon the threshold of the inquiry, the plaintiff challenges the validity of the receivers' appointment, on the ground that the court had no jurisdiction of the proceedings by virtue of which they were appointed. This objection, however, is clearly untenable. It appears to have been suggested by the recent decision of this court in *Moody* v. *Port Clyde Development Co.*, 102 Maine, 365. It was there held that chapter 85 of the Public Laws of 1905 under which the receiver in that case was appointed, was in effect an insolvent law, and that inasmuch as the United States Bankruptcy Act of 1898 was in existence at that time, chapter 85 of the Laws of 1905, never went into operation and the State court had no authority to appoint a receiver. But in the case at bar the court was clearly authorized to take jurisdiction of the bill for the foreclosure of this mortgage by virtue of chapter 52, sec. 59 of the Revised Statutes and in accordance with articles 2 and 3 of the mortgage. It had authority to appoint a receiver without the aid of the provisions of chapter 85 of the Laws of 1905. Furthermore, it appears from section 4 b of the United States Bankruptcy Law of 1898, as amended in 1903, that railroad corporations are not included in the terms of that Act since it is expressly made applicable only to corporations engaged principally in "manufacturing, trading, printing, publishing, mining and the mercantile pursuits." It was accordingly held in *Gailing* v. *Seymour Lumber Company*, 113 Fed. Rep. 483, with respect to the bill brought to foreclose a mortgage and appoint a receiver, that although the State law was suspended as applied to cases of insolvency, it was a good bill for the

foreclosure of a mortgage and the appointment of a receiver and that the receiver was entitled to hold the property as against the trustee in bankruptcy, the latter being entitled only to the excess of value of the property above the mortgage debt.

It is next contended in behalf of the plaintiff that notwithstanding the provisions of R. S., ch. 53, sec. 24, that "Any street railway corporation may issue bonds in accordance with the provisions of the general law for any lawful purpose and secure the same by mortgage of its road, franchise and property," the mortgage in question to the Federal Trust Company cannot legally include after acquired property like the rails in question, for the reason alleged that at that time the corporation had no tangible property in existence and nothing to mortgage except its franchise. The general proposition is not questioned that a mortgage attaches to any property which is an "accession to the thing granted, which is embraced within the powers of the company as they existed when the mortgage was executed," but it is argued that the subsequently acquired property in this case was not an accession to anything that existed when the mortgage was made.

But it has been seen that prior to the execution of the mortgage, the corporation had acquired title to two acres of land for station purposes, and it is not controverted that it was a legally organized corporation with a franchise for a street railway and that a copy of the survey and location had been filed with the commissioners. It is not necessary that the corporation should be actually possessed of tangible property approximating in value the amount of the bonds which the mortgage is given to secure in order that an express provision therefor in the mortgage may be legally operative to include subsequently acquired property. Such a requirement would defeat the principal purpose for which such mortgages are authorized. They are executed for the purpose of procuring the necessary funds for the construction and equipment of the railroad, and it would be a self-destructive provision that would require a railroad fully constructed and equipped as the only legal basis of such a mortgage. This practical feature of the question is more fully recognized in R. S., ch. 52, sec. 32, which by section 18 of chapter 53 is expressly made

applicable to street railroads. It provides that "A railroad corporation to obtain money to build or furnish its road, or to pay any debts contracted for that purpose, may issue its bonds in sums not less than one hundred dollars," etc.

The judicial opinion of the State as announced in the comparatively recent decisions of this court is no less explicit and conclusive upon this question.

In the case at bar the general description in the mortgage of the property covered by it is as follows : "All and singular the roadbed, tracks, and poles, lines, wires, machinery, rolling-stock and railroad equipment, together with all its property, rights and privileges, and franchises of every kind and nature, including rights of way, land and buildings."

Then follows a description of after-acquired property as follows : "All property, rights, privileges and franchises of every kind and nature which the Railway Company shall hereafter acquire, or which shall come into its possession as owner, the Company hereby covenanting with the Trustee and its successors, that from time to time as the Railway Company acquires and comes into the possession or enjoyment of additional property (real, personal or mixed and whether for railway, lighting, heating or power purposes), rights, privileges and franchises, the same shall become and remain subject to the lien of this mortgage as fully and completely as though owned and possessed by the Company at the date hereof; and that it will from time to time, on request, make and deliver to the Trustee, such deeds or other instruments in writing as may be appropriate to vest the title thereto, free from all liens and incumbrances in the Trustees, to be held upon and subject to the Trusts and agreements herein contained."

In *Hamlin* v. *Jerrard,* 72 Maine, 62, the plaintiff brought an action of trespass against a sheriff for taking on a writ and selling on execution a narrow gauge locomotive engine that had been purchased with a view to a change of gauge on the road in the near future, but not then made. In the opinion the court say :

"The mortgagors had a charter for a railroad, with all the necessary franchises and rights for its construction, equipment and opera-

tion.   The mortgagee had previously contracted to construct and equip it for the company, and the work had been commenced.   He was to be paid partly in the bonds of the company, which would sell in the market.   .   .   .   .   A large part of the numerous railroads in this country have been constructed by the aid of mortgages to individuals or trustees.   .   .   .   .   "The weight of authority in this country is in favor of the doctrine that the power to mortgage is incident to the rights granted by the Act of incorporation.   Even if the franchise to be a corporation cannot be assigned, "the franchises to build, own and manage a railroad, and take tolls thereon, are not necessarily corporate rights; they are capable of existing in and of being enjoyed by natural persons, and there is nothing in their nature inconsistent with their being assignable."   "When the railroad itself is mortgaged with the franchise, the rolling-stock to be acquired for the purpose of completing or repairing it is so appurtenant to it, that the company have a present, existing interest in it sufficient to uphold the grant of both together, the one as incident to the other.   Their title to the railroad is the foundation of an interest in the cars and engines to be acquired for its use."   "We regard it as settled by the weight of authority that any property connected with the use of the franchise of a railroad corporation for the purposes intended by its charter, to be subsequently acquired, may be effectually mortgaged.   The validity of such a lien upon after acquired property is distinctly held by this court in *Morrill* v. *Noyes*, 56 Maine, 458, 471, at least against a later mortgage given after the property was in existence and in the possession of the company; and the language of the court is quite as applicable to the case of a subsequent attaching creditor:   'That a mortgage of a railroad and the franchises of the company with all the rolling stock then owned and to be afterwards acquired and placed upon the road, will create a valid lien upon cars and engines subsequently purchased, there would seem to be no longer any doubt.'

"It may therefore be regarded as judicially settled, with little or no divergence of opinion, that in equity a mortgage of a railroad

will be held to apply to after-acquired rolling-stock, and other personal property, if the terms of the mortgage cover such future acquisitions."

"But all rolling-stock to be acquired, as well as materials and equipments for constructing, maintaining, operating, repairing and replacing the road and its appurtenances or any part thereof, are within the specific statement of property mortgaged." . . . . "We think that such property as this, of a class specially mentioned in the mortgage, acquired for lawful railroad purposes, or land for present use, or to meet expected requirments, is held by the mortgagors subject in equity to the mortgage from the time their title and possession accrued, and that when the trustees become actually possessed of it under the mortgage, they may hold such possession at law against the attaching creditors of the corporation." . . .

"In equity it is not disputed that the moment the property comes into existence the agreement operates upon it."

The equitable principle governing the provision in the mortgage relating to the execution upon request of further mortgages of after-acquired property, is thus explained in Rorer on Railroads, page 246. "Upon the principle that equity considers that as done which a chancellor would decree to be done, and as upon every acquisition of property within the description contained in the mortgage a chancellor would decree the company to execute a mortgage it will be, therefore, considered and treated as though it had been done."

It appears that prior to the plaintiff's attachment of the rails, the mortgage to the Federal Trust Company was recorded in the Registry of Deeds of Knox County, and in the office of the town clerk of South Thomaston in which the railroad built by this corporation was wholly located. Furthermore it appears from the testimony of the plaintiff himself that before his attachment was made, the plaintiff personally examined the record of this mortgage in the Registry of Deeds.

The defendants thereupon contend that if the rails be deemed personal property under the circumstances of this case, no legal attachment of them could in any event have been made on the

plaintiff's writ, except in conformity with the general provisions of the statute relating to the attachment of personal property under mortgage.

But it is unnecessary to give further consideration to this branch of the discussion.

It is not in controversy that the rails sued for became the property of the corporation by purchase, and it is the opinion of the court that they were included in the description of after-acquired property in the mortgage, and that they legally passed into the custody of the defendants as receivers who had been appointed by the court to take possession of all the property of the corporation and manage it for the interest of bondholders and creditors as their rights might be made to appear. The entire property was thus in the custody of the law when the plaintiff without leave of court presumed to seize and sell the rails in question which formed a part of it, on the execution issued on a judgment which was also taken after the receivers were appointed. This the law did not permit the plaintiff to do. The authorities are substantially uniform in support of the proposition that such a sale has no validity and passes no title. Property in custodia legis is not thus subject to seizure and sale on execution. This doctrine, so manifestly indispensable to the successful management of property and the orderly administration of estates is so firmly established and generally recognized, that no citation of authorities in support of it is necessary. "If a creditor thinks the property not properly in the hands of the receiver, or that the demands for which it is placed there are unjust, it is his duty to apply to the same court which appointed the receiver and placed him in possession thereof, for its discharge from legal custody, that he may proceed against it by suitable process in his own behalf. But it cannot be wrested by piecemeal from the custody of the law by adverse proceedings. Not even a suit will lie against a receiver, except by permission of the court appointing him. The party aggrieved is to apply for relief to that same court." 2 Rorer on Railroads, p. 899, sec. 3.

Again in Alderson on Receivers, section 584, the principle applicable to such situations is thus stated: "The possession of the

receiver being considered the possession of the court, the property in his hands is looked upon as being in custodia legis, and, on that account, it is not to be taken upon any writ of attachment or execution while in his possession.    In compliance with this rule it has been decided that the recovery of a judgment against partners after the appointment of a receiver for the benefit of creditors, does not create a lien upon any of the firm property or funds in his hands, and such property or funds cannot be levied upon by execution or reached by garnishment because it is already in custodia legis.    So also the owner of a judgment lien upon land in the possession of a receiver cannot levy execution thereon, but must apply to the court in chancery which will protect his interests when making sale or distributing the proceeds of the land."

In *Walling* v. *Miller*, 108 N. Y. 173 and *Wiswall* v. *Sampson*, 14 How. (U. S.) 52, it was explicitly declared that while property is thus in the custody of the court, a sale thereof on execution without leave of the court, was wholly illegal and void.    See also same case, 2 Am. St. Rep. 400, and extended note thereto ; *Gilman* v. *Ketcham*, 84 Wis. 60.

This action of trover against the receivers in this case was also brought without leave of court.    It is true, as already stated, that the plaintiff has declared against the defendants as individuals and not as receivers, but it is not in controversy that whatever was done by them was done in their capacity as receivers.    In *Morrill* v. *Noyes*, 56 Maine, 458, the plaintiff had leave to bring suit against the defendant and elected to bring it against him as an individual and not as receiver, on the ground that as receiver he had no right to take the property.    The court thus explain the course of procedure under such circumstances :    "After the receiver has taken possession, any person claiming the property, or any interest therein, may present his claim to the court.    He may be made a party to the suit in order to establish his claim.    Or he may petition to have it heard before a master.    Or he may, by express permission of the court, bring a suit for the possession, care being taken to protect the receiver,    But the receiver will not be ordered to deliver the property to a claimant until his right is established, in one of these

modes. Nor can any claimant bring a suit against the receiver, except by leave of court, without being liable for a contempt, if the property is a part of the subject matter in controversy.

"The general principles are decisive of the case before us. The receiver came rightfully into possession of the property. It was his duty to retain possession until ordered otherwise by the court. The plaintiffs had leave to bring this suit, but they chose the form of their action. They have mistaken their remedy. Their action is not a suit for the possession, but is an attempt to hold the receiver personally liable for the value of the property. Such an action cannot be maintained under the circumstances of this case." See also Alderson on Receivers, pages 521 to 524, and Rorer on Railroads, p. 894.

The conclusion is that this action is not maintainable and that the entry must be,

*Judgment for the defendants.*