SUSQUEHANNA STEAMSHIP COMPANY, INC., Respondent, v. A. O. ANDERSEN & CO., INC., Appellant.

First Department, February 4, 1921.

Conflict of laws — when State court has no right to enjoin proceedings in United States court — inability of plaintiff to set up all its defenses or counterclaims — multiplicity of actions.

In a suit for an accounting and for an injunction restraining the defendant from prosecuting two actions in the United States District Court, one in the Southern District of New York to recover from the plaintiff and others an amount claimed to be due under a charter party, and the other in the Eastern District of Virginia to recover from the plaintiff upon the same cause of action in which a writ of foreign attachment was issued, and a steamship belonging to the plaintiff seized, *held*, that the plaintiff has not established any ground for an injunction, and that the defendant acted with diligence and the Federal courts have jurisdiction of the parties and of the subject-matter of the litigation and can do full justice between the parties.

The fact that the plaintiff has not been able to set up all the defenses or counterclaims to which it thinks it is entitled is no ground for interfering with the orderly procedure of a court which has power in appropriate actions therein to determine all the claims of every party to the controversy.

Nor is there merit in the plaintiff's claim that a multiplicity of actions furnishes a basis for the relief sought.

APPEAL by the defendant, A. O. Andersen & Co., Inc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 20th day of December, 1920, granting plaintiff's motion for an injunction *pendente lite*.

*Herman S. Hertwig* of counsel [*John A. McManus* with him on the brief; *Duncan & Mount*, attorneys], for the appellant.

*Alvin C. Cass* of counsel [*Cass & Apfel*, attorneys], for the respondent.

DOWLING, J.:

The controversy between these parties arises out of the charter of the steamship *Lydia* by the Lydia Steamship Company to F. E. Crotois on September 12, 1919, for six months

First Department, February, 1921. [Vol. 195.

at a monthly charter hire of $59,380, payable in advance. Simultaneously with the making of this charter, the defendant entered into a written agreement with the Lydia Steamship Company, as to the legal effect of which there is a dispute. Plaintiff claims that the instrument is an original promise by defendant to pay the amount of the charter here in full to plaintiff. Defendant claims that it agreed only to attend to the collection of the charter hire, to advance to the Lydia Steamship Company the amount of the charter hire when it fell due and to reimburse itself therefor when the amount was collected from Crotois or his guarantors, but without any liability for the debt. Under date of September 13, 1919, defendant was directed to make its payments under the agreement to the plaintiff, to which it did in fact pay two months' charter charges. Crotois became insolvent and the claim was then made that defendant was under an absolute duty to pay the charter hire, which claim it rejected. Thereupon the Lydia Steamship Company and the defendant entered into a written agreement on November 28, 1919, by which in effect the ship was to be turned over to defendant to operate as agent for the balance of the charter term and it was to continue to pay the monthly charter payments without prejudice to its rights. When the period of the charter had expired, there was to be an effort made to work out an amicable adjustment of the questions involved between the parties, and if such adjustment could not be had, the questions involved were to be settled by arbitration or by suit. This agreement was assigned by the Lydia Steamship Company to plaintiff on February 24, 1920. All the stock in both these companies is owned by Frank Auditore and Joseph Auditore.

The vessel was operated under this agreement. In December, 1919, defendant made a charter for the vessel with plaintiff to carry a cargo of sugar (which plaintiff had contracted to carry for Lamborn & Co.) from Cuba to Holland in February, 1920, for the sum of $147,867.46, payable ten days after receipt of cable advice from the master of the ship that the vessel had been loaded and bills of lading signed. Disputes arose as to the party who would sign the contract of carriage, but it was signed ultimately by plaintiff, with an assignment to defendant of sufficient of the moneys to become due from

Lamborn to plaintiff to pay the charter hire due from plaintiff to defendant, which assignment Lamborn & Co. refused to recognize. Being called upon by defendant for further assurance of the freight charges, it was given by the personal guaranties of Frank Auditore and Joseph Auditore. The plaintiff on February 24, 1920, took assignments of all the rights of the Lydia Steamship Company under the Crotois charter, the agreement of September twelfth between the Lydia Company and defendant and the agreement of November twenty-eighth. Advice was received on February 16, 1920, that the vessel had been loaded and the bills of lading signed, as the result of which, under the terms of the charter, the charter hire is claimed to have become due from plaintiff to defendant on February 26, 1920. Defendant claims that although it had complied with all its duties under its agreement and had made payments amounting to $296,900, and had further incurred over $20,000 of obligations in the operation of the *Lydia*, the plaintiff and the Auditores refused to pay the charter hire that fell ‧ due on February twenty-sixth. Defendant being unable to obtain any part of the charter hire, notified plaintiff and the Auditores on March 4, 1920, that it was unable to operate the vessel further under the circumstances, and abandoned it in Amsterdam, Holland. There are numerous details of the dealings between the parties to which it is unnecessary to refer, but it is apparent that the question of who was guilty of the breach of the agreement between the parties is one which will be bitterly contested and will involve a multitude of conflicting claims. There is also a controversy as to the legal effect of the instruments executed by the parties. Many questions must be decided before the legal rights of the parties can be determined.

The defendant lost no time in taking legal action to enforce its claimed right under the charter to carry the cargo of sugar.

(1) On March 4, 1920, defendant filed a libel in the United States District Court for the Southern District of New York to recover from the Susquehanna Steamship Company (this plaintiff) and Frank Auditore and Joseph Auditore as guarantors, the sum of $147,867.45, claimed to be due under the charter party of December 29, 1919.

(2) On March 5, 1920, defendant filed a libel in the United States District Court for the Eastern District of Virginia to recover from the Susquehanna Steamship Company upon the same cause of action, and in that suit issued a writ of foreign attachment and seized the steamship *Susquehanna* belonging to said company and placed a United States marshal on board and plaintiff was compelled to give a stipulation for value for $147,867.37 to release the vessel and permit it to sail, giving a surety company bond at an expense to it of $1,400.

(3) Defendant commenced an action in the Supreme Court, New York county, against the firm of Lamborn & Co. to recover the sum of $147,867.37, upon the alleged assignment of freight moneys, dated December 29, 1919.

It is not necessary to enter into a consideration of the various steps already taken in these actions. On November 11, 1920, plaintiff commenced this action in the Supreme Court, New York county, setting forth at length all the transactions between the parties and the pendency of the three actions referred to and asked judgment as follows:

(1) That the agreement of the defendant dated September 12, 1919, is a good and valid contract on its part to pay the charter hire as the same should become due to the Lydia Steamship Company, Inc., under its charter with F. E. Crotois (Exhibit A), attached to this complaint.

(2) That the defendant defaulted and breached its agreement by a refusal to pay charter moneys which became due November 27, 1919, and by its insistence upon the making of said agreement of November 27, 1919, and it further breached its agreement by the failure to pay the moneys due for the month of February 27 to March 27, 1920, and again for the month of March twenty-seventh to April twenty-seventh, and again for the time April 27 to May 21, 1920, and it is now in default therefor.

(3) That the charter of December 29, 1919, for the steamship *Lydia* by the defendant to the plaintiff was made by the defendant as the managing agent of the plaintiff and without any financial interest of the defendant therein except in the carrying out of its agency so long as such agency should continue.

(4) That the agency of the defendant under said charter

terminated by its breach of contract and by agreement of the parties prior to the commencement of this action in the United States District Court for the Southern District of New York against this plaintiff to recover alleged charter hire and prior to its commencement of a similar action in the United States District Court for the Eastern District of Virginia, and prior to its commencement of its action for alleged assignment of freight moneys against Lamborn & Co. in the Supreme Court, New York county, and thereby this plaintiff became released and discharged from its obligation to pay said sum of $147,867.37 or any part thereof sued for in said actions 1 and 2 in the United States District Court.

(5) That the assignment by the Lydia Steamship Company, Inc., of February 24, 1920, to this plaintiff was a good and valid assignment and transferred all the rights of the Lydia Steamship Company against said defendant and by reason thereof this plaintiff became the principal under said charter between A. O. Andersen & Co., Inc., as agent and the Susquehanna Steamship Company, Inc., dated December 29, 1919.

(6) That the assignment, request or instruction of Lamborn & Co. to pay freight moneys to the defendant dated December 29, 1919, was taken by said defendant as a managing agent for the Lydia Steamship Company, Inc., and that it had no financial right, claim or interest in said moneys and was taken conditional upon the acceptance thereof by the said Lamborn & Co. and became lapsed and void through the agreement of the parties subsequent thereto and the substitution of the guaranty of Frank and Joseph Auditore dated January 30, 1920 (Exhibit F), attached to this complaint.

(7) That both the obligation of Lamborn & Co. to pay said sum of $147,867.37 to the defendant or of Frank and Joseph Auditore to carry out their guaranty dated January 30, 1920, lapsed and became void by the termination of the agency of the defendant to act for said Lydia Steamship Company, Inc.

(8) That there are no moneys due from this plaintiff to the defendant, but that upon the contrary the plaintiff have judgment against the defendant for the sum of $59,063.59 charter moneys due to it as the assignee of the Lydia Steam-

ship Company, Inc., under the agreement of the defendant dated September 12, 1919.

(9) That the defendant be required to account for all the earnings and disbursements received and made by it as the agent of the steamship *Lydia* under the terms of the agreement of November 28, 1919, and be required to turn over to and account to this plaintiff as the assignee of said Lydia Steamship Company for any balance so collected by it.

(10) That the defendant be forever enjoined and restrained from prosecuting said actions in the United States District Court for the Southern District of New York and in the United States District Court for the Eastern District of Virginia to recover the sum of $147,867.37 or any part thereof, and that it be permanently enjoined and restrained from suing this plaintiff for any charter moneys claimed under the charter between the defendant as agent and this plaintiff dated December 29, 1919 (Exhibit D), attached to this complaint.

(11) That the defendant be permanently enjoined and restrained from bringing its action against Arthur H. Lamborn and others comprising the firm of Lamborn & Co. to recover the said sum of $147,867.37 under the said request, instruction or assignment dated December 29, 1919 (Exhibit E), attached to the complaint.

(12) That the plaintiff have such other and further relief as to the court may seem just, together with the costs and disbursements of this action.

On November 12, 1920, plaintiff obtained an order to show cause why an injunction *pendente lite* should not issue restraining defendant from bringing to trial its three suits, and meantime their prosecution was enjoined. On December 18, 1920, the order was made whereby upon plaintiff's giving an undertaking in the sum of $165,000, defendant was enjoined and restrained during the pendency of this action from proceeding further with the prosecution of the suit brought by it in admiralty in the United States District Court for the Southern District of New York against the plaintiff and Frank Auditore and Joseph Auditore to recover the sum of $147,867.37 and interest; also from proceeding further with the prosecution of the suit brought by it against the plaintiff in admiralty in the United States District Court for the Eastern

District of Virginia, to recover the sum of $147,867.37 with interest; also from proceeding further in the prosecution of the suit brought by it in the New York Supreme Court, New York county, against Arthur H. Lamborn and others, copartners trading under the firm name and style of Lamborn & Co., to recover $147,867.37 with interest.

Plaintiff concedes that the general rule as to the right of State courts to enjoin proceedings in the United States court is as laid down by Judge WILLARD BARTLETT in *Beardslee* v. *Ingraham* (183 N. Y. 411) as follows (at p. 417): " The general rule that there is no authority in the State courts to enjoin proceedings in the courts of the United States is laid down as distinctly as a judicial proposition can be declared and the correctness of the conclusion finds ample support in the authorities cited. (See *Peck* v. *Jenness,* 7 How. [U. S.] 612, 624; *Riggs* v. *Johnson County,* 6 Wall. 166; 2 Story's Equity Jur. § 900; *Moran* v. *Sturges,* 154 U. S. 256.)   In the case last cited (which was a reversal of *Matter of Schuyler's Steam Tow Boat Co.,* 136 N. Y. 169), the question was whether it was within the power of a State court to restrain the libellants in a District Court of the United States from prosecuting their libels, and the chief justice declared the general rule to be ' that State courts cannot enjoin proceedings in the courts of the United States,' and reviewed a large number of authorities sustaining that doctrine.   Furthermore, it is ' a rule of general application that where property is in the actual possession of one court of competent jurisdiction, such possession cannot be disturbed by process out of another court.' (*Moran* v. *Sturges, supra,* on p. 274.)"

But plaintiff claims that there is an exception to this rule, namely, that the right to enjoin exists where the United States courts have not jurisdiction to properly try the issue and to do justice between the parties, and an irreparable injury will, therefore, result.   And it calls attention to the decision handed down by the Supreme Court of the United States on December 6, 1920, in *Wells Fargo & Co.* v. *Taylor* (254 U. S. 175; 41 Sup. Ct. Rep. ——).   Therein the court in sustaining a permanent injunction against the enforcement of a judgment obtained in a court of the State of Mississippi, obtained on the ground that an injustice was created against the company by the judgment,

considered the effect of section 265 of the Judicial Code (36 U. S. Stat. at Large, 1162), formerly section 720 of the United States Revised Statutes (U. S. Comp. Stat. 1916, § 1242), providing that " The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." The court said: " The provision has been in force more than a century and often has been considered by this court. As the decisions show, it is intended to give effect to a familiar rule·of comity, and, like that rule, is limited in its field of operation. Within that field it tends to prevent unseemly interference with the orderly disposal of litigation in the State courts and is salutary; but to carry it beyond that field would materially hamper the Federal courts in the discharge of duties otherwise plainly cast upon them by the Constitution and the laws of Congress, which, of course, is not contemplated. As with many other·statutory provisions, this one is designed to be in accord with, and not antagonistic to, our dual system of courts. In recognition of this it has come to be settled by repeated decisions and in actual practice·that, where the elements of Federal and equity jurisdiction are present, the provision does not prevent the Federal courts from enjoining the institution in the State courts of proceedings to enforce local statutes which are repugnant to the Constitution of the United States [citing cases], or prevent them from maintaining and protecting their own jurisdiction, properly acquired and still subsisting, by enjoining attempts to frustrate, defeat or impair it through proceedings in the State courts [citing cases], or prevent them from depriving a party, by means of an injunction, of the benefit of a judgment obtained in a State court in circumstances where its enforcement will be contrary to recognized principles of equity and the standards of good conscience " (citing cases).

We deem it sufficient for the disposition of this appeal to hold that plaintiff has not established any ground for the injunction sought. Defendant acted with diligence, and selected its forum for the determination of its claim against plaintiff. The court in which it commenced its actions had jurisdiction of the parties and of the subject-matter of the

litigation.   In one of these actions defendant secured an attachment of plaintiff's property and obtained an undertaking to secure any judgment it might obtain.   I am unable to find any support for the contention that the United States courts cannot do full justice between the parties, all of whom are subject to their jurisdiction.   The fact that plaintiff has not been able in any particular case to set up all the defenses or counterclaims to which it thinks it is entitled is no ground for interfering with the orderly procedure of a court which has power in appropriate actions therein to determine all the claims of every party to this controversy.   The proper tribunal to administer justice between them is the Federal court, which already has jurisdiction and wherein defendant has already obtained security for its claim.   The arguments advanced by plaintiff do not satisfy us that any injustice can possibly result to it from the prosecution of these actions or that it will be denied the protection of any of its rights by a lack of power in the Federal courts.   Nor is there merit in the claim that a multiplicity of actions furnishes a basis for the relief sought.   There are but two actions brought by defendant wherein plaintiff is a party defendant and one of these was brought that the liability of the Auditores, who own all the stock of plaintiff, as guarantors upon its agreement, might be determined.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

CLARKE, P. J., PAGE and GREENBAUM, JJ., concur.

LAUGHLIN, J. (concurring):

Both comity and inability to enforce the order or decree forbid one court from attempting to interfere with property over which another court of competent jurisdiction has assumed jurisdiction by taking the property into *custodia legis*, or from attempting *to enjoin a court* of competent jurisdiction or proceedings therein; but my understanding of the law is that, without contravening these principles, in a proper case a party, over whom a court has acquired jurisdiction, may be *stayed* from prosecuting an action or proceeding

in another court, whether State or Federal, which has not sufficient jurisdiction to hear and decide all of the issues between the parties and to grant full and complete relief with respect thereto. The opinion of Mr. Justice DOWLING seems open to implications to the contrary, and, therefore, with the expression of these views I concur in the result.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.