# FRED REED et al. v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY et al., Appellants.

### Division One, March 1, 1919.

1. **RECEIVERS: Taking Property from Custody.** One court cannot by appointing a receiver take from the custody of a receiver pre-viously appointed by lawful order of another court the assets and estate in the latter's hands as receiver. But a suit to declare a forfeiture of land granted to a railroad company in the hands of receivers for failure to keep a covenant to stop trains on signal, unless within a reasonable time they comply with such covenant, is not such a suit.

2. ———: **Suit Without Leave.** Except in actions to deprive receiv-ers of possession of receivership property, want of leave to sue receivers appointed by another court is not jurisdictional, but such actions may be controlled by injunctive process or by pro-ceedings as for contempt. If there is no attempt to interfere with the actual possession of property held by the receiver under the order of a court appointing him, jurisdiction of another court does not depend upon leave to sue. The rule applies where the receiver has been appointed by a Federal court and the action is brought in a State court.

3. ———: ———: **Waiver.** A receiver may waive the point of want of leave to sue, by appearing without objection and pleading without raising the point and praying affirmative relief.

4. ———: ———: **Leave to Defend: Presumption.** Voluntary ap-pearance and submission to the jurisdiction by a receiver raises a presumption of leave to defend.

5. ———: ———: **Failure to Raise Point in Trial Court.** The re-ceiver appointed by the Federal court having appeared in the State court and having failed to raise the point that the State court was without jurisdiction for that plaintiff had not obtained leave to sue, will not be heard on appeal or elsewhere to raise the point of want of jurisdiction. [Overruling Haag v. Ward, 89 Mo. App. 186, and Smith v. Railroad, 151 Mo. 391, in so far as they hold that want of leave was not waived.]

6. ———: ———: **Certifying Judgment to Federal Court.** The State court after having adjudged that plaintiffs were entitled to have certain passenger trains stop on signal and that if the railroad company and its receivers previously appointed by the Federal court "fail to stop their trains on signal, then all the right, title

and interest which they have acquired" in the strips of ground described in their deed should be divested and vested in plaintiffs, by ordering that no execution issue and that the judgment be certified to the Federal court, left the latter court in full power to direct the manner in which the judgment should be rendered effectual.

7. **COVENANT IN DEED:** Stopping Passenger Train: Limitations. An intent to violate a covenant contained in a deed to stop passenger trains on signal is not enough to start the Statute of Limitations running. Where the evidence shows that no one with any right to enforce such a demand had made request that a train be stopped on signal and had that request refused by the company until a short time before the suit was brought, a failure of the company for more than ten years to schedule its through trains to stop on flag and failure in fact to stop them, could not start the statute, or bar the act to forfeit the land, according to the covenant.

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins,* Judge.

AFFIRMED.

*W. F. Evans* and *Mann, Todd & Mann* for appellants.

(1) The court erred in refusing to sustain the objection to the introduction of any evidence and in refusing to dismiss the case at the conclusion of all the evidence, because upon the allegations in the petition and the admissions in the case the fact that the receivers of all the property of the railroad company, including the real estate involved in this suit, had been appointed by the United States Court, deprived the circuit court of Jasper County of jurisdiction in this action. Murphy v. Hoffman, 53 L. Ed. (U. S.) 330; Palmer v. Texas, 53 L. Ed. (U. S.), 435, 440; Rickey v. Miller, 53 L. Ed. (U. S.) 1032; State ex rel. v. Reynolds, 209 Mo. 180; State ex rel. v. Williams, 221 Mo. 254; Bray v. Marshall, 66 Mo. 123; Springfield S. W. Ry. v. Schweitzer, 246 Mo. 127.    (2) The court should have found the issue for defendant, because plaintiffs' cause of action accrued more than ten years prior to the institution of this suit and was barred by

the Statute of Limitations. Hoke v. Central Twp. Farmers' Club, 194 Mo. 576; Blair v. Railroad, 92 Mo. App. 538; Jones v. Railroad, 79 Mo. 96-7; Boyd v. Buchanan, 176 Mo. App. 56.

*Gray & Gray* for respondents.

(1) The appellants in declaring that inasmuch as the property of the company, including the real estate involved in this suit, was in the hands of the receivers under appointment by the United States Court, the circuit court of Jasper County was without jurisdiction in the action, state the proposition too broadly. The Federal court could have retained jurisdiction in all these matters, or at its discretion authorized the respondents to institute their suit in Jasper County or the defendant receivers to appear in the Jasper County Circuit Court and file their answer asking for affirmative relief. Smith v. St. Louis & San Francisco Railroad Co., 151 Mo. 402; Durand & Co. v. Howard & Co., 216 Fed. 585, L. R. A. 1915 B, 998. (2) This being true, it cannot be said that the question is one of jurisdiction in its broadest sense because the courts hold that even though at the time the suit was instituted permission had not been obtained from the court in which the receivership matters were pending, yet such permit may be obtained at any time. Hirshfeld v. Kalischer, 81 Hun (N. Y.) 606. (3) Failure to obtain the leave does not deprive the court of all jurisdiction. Southwestern Surety Ins. Co. v. Pacific Coast Casualty Co., 159 Pac. 788; Payson v. Jacobs, 80 Pac. 429; Mulcahey v. Strauss, 151 Ill. 70. In any event, the defendants by appearing and asking for affirmative relief are bound by the judgment. Manker v. Phoenix Loan Association, 100 N. W. 38; Flenthan v. Steward, 63 N. W. 924. (4) The defendants having appeared and filed their answer asking for affirmative relief, they stand in the same position as if they had been parties plaintiffs in the case, and as the record

is silent as to their authority to file the answer asking affirmative relief, it will be presumed that they had the consent of the court appointing them. Manker v. Phoenix Loan Association, 100 N. W. 38. To the same effect are Carter v. Rodewald, 108 Ill. 351; Brook v. Watts, 19 S. C. 539, and Scott v. Duncombe, 49 Barb. 73. (5) The court should give proper weight to the fact that at no place in the record did the appellants in the trial court assert, claim or even insinuate that the receivers were not authorized to appear and file the answer asking for the affirmative relief. The question really is, therefore, can receivers institute a suit to quiet title and defeat a judgment obtained against them because the record does not affirmatively show that they obtained permission of the court in which the receivership matters were pending to institute the suit? We say that in the absence of such testimony, the presumption will prevail that they had obtained such permission. (6) Plaintiffs' cause of action was not barred by the Statute of Limitations when this suit was commenced. There is no proof that the company did not recognize the validity of the contract and that it was not still in force up to within a short time before this suit was instituted. Parrott v. Atl. Railroad Co., 81 S. E. 348. (7) Even though there be a formal breach of a contract, yet in order to preserve his right, the grantee is not compelled to file suit immediately, but he may wait until he has sustained some actual damage before instituting his suit. State ex rel. v. Tittman, 134 Mo. 162; Chambers v. Smith, 23 Mo. 174; Pineland Mfg. Co. v. Trust Co., 139 Mo. App. 209. (8) The covenant or agreement to stop trains is a continuing one and from day to day, and for that reason the Statute of Limitations does not run until the party complaining has suffered some real damage. Schaber, Admx. v. St. Paul Water Co., 14 N. Y. 874; Carnegie Realty Co. v. Carolina C. & Ry. Co., 189 S. W. 371.

BLAIR, P. J.—This is a suit under a covenant in a deed executed by the father of respondents to the assignors of appellant railway. The other appellants are receivers of the railway company, appointed by the Federal Court for the Eastern District of Missouri on May 27, 1913. This suit was begun November 1, 1913. The covenant mentioned provided, among other things, that passenger trains should be stopped at Reeds on signal and that a failure of the grantees "to perform their part of the agreement shall make void this deed and the land herein quitclaimed shall revert to its original owner." The prayer of the petition is "for a judgment devesting said Railroad Company and said receivers of all right, title and interest in and to said premises, after giving them a reasonable length of time in which to comply with the terms of said instrument." The court adjudged that respondents were entitled to have certain passenger trains stop on signal for passengers "and that if defendants continue to fail to stop their trains on signal, then all the right, title and interest which they have acquired in and to said strips of ground should be devested and vested in plaintiffs."

The court further ordered that since the road was in the hands of the receivers no execution should issue, but a certified copy of the judgment should be filed with the appointing court and that "the enforcement of said judgment shall be in said court in which said receivership matters are pending."

A statement of some of the proceedings prior to the trial is pertinent. December 10, 1913, the company and receivers filed separate answers. These were general denials. June 15, 1914, the receivers filed an amended answer. After the evidence was in an amended petition was filed with leave, and the receivers refiled their amended answer, and the company refiled its answer. The amended answer of the receivers consisted of (1) a general denial, (2) a plea that defendants had been in the "actual, open, visible, notorious posses-

sion of the strip of ground . . . described in the petition, and claiming to be the owners of the same, for more than ten years prior to the institution of plaintiffs' suit. That during all of said time there has been on said strip of ground railroad tracks and a depot, and defendants have been engaged in operating thereon a railroad, and that said strip of ground forms an integral part of its right of way and line of railroad over which defendants operate their trains from St. Louis, Missouri, to and through Jasper County, Missouri, and on into the States of Kansas and Oklahoma. Wherefore, defendants pray that the court will adjudge the title of said strip of ground described in plaintiffs' petition to be well vested in these defendants and for costs.'' The third paragraph sets up the ten-year Statute of Limitations as a defense.

On the trial the defendants' objected to the introduction of any evidence on the ground that the petition failed to state a cause of action and that the petition ''shows that the property of the railroad is in the hands of receivers, and the jurisdiction of the *res* of the property should be in the court appointing the receivers; this court has no jurisdiction.''

Appellants raise two questions. First, that the Jasper Circuit Court had no jurisdiction, since the property was in the hands of receivers appointed by another court. Second, that the cause of action was barred by the ten-year Statute of Limitation.

I. The first contention is that the fact that the railroad property was in the hands of receivers appointed by another court deprived the courts of Jasper County of jurisdiction in this case.

(a) It is well settled that one court may not appoint a receiver and take from the custody of a receiver previously appointed by lawful order of another court the assets and estate in the latter's hands as receiver. [State ex rel. v. Reynolds, 209 Mo. 161.] It was held also in State ex rel. v. Williams, 221 Mo.

227, and Hardware Company v. Building·Company, 132 Mo. l. c. 452, that in case one court has taken jurisdiction of a particular subject-matter and rendered its decree and the right of appeal is open to the losing party, a second court has no jurisdiction to open up and cause to be relitigated the questions determined by the decree rendered by the court which first took jurisdiction. • The authorities generally are in accord with these decisions. It is apparent this case does not fall within either of these principles. The contention of appellants is, in substance, that no action or suit can be brought against receivers without leave of the court appointing them and that want of leave is jurisdictional.

(b) It is now well recognized that the great weight of authority sustains the view that, except in actions having the purpose to deprive receivers of possession of the receivership property, want of leave to sue is not jurisdictional but that such action may be controlled by injunctive process or by proceedings as for contempt. [High on Receivers (4 Ed.), sec. 254a; Alderson on Receivers, sec. 525; Carter v. Rodewald, 108 Ill. 351; Railroad v. Smith, 19 Kan. l. c. 230, 231; Bank v. Risley, 19 N. Y. l. c. 376, 377; ˙Kinney v. Crocker, 18 Wis. l. c. 77, 78; Blumenthal v. Brainerd, 38 Vt. 402; Lyman v.. Railroad, 59 Vt. 167; Allen v. Railroad, 42 Iowa, l. c. 686, et seq.; Hirshfeld v. Kalischer, 81 Hun, 606; Shedd v. Seefeld, 230 Ill. l. c. 127; Leuthold v. Young, 32 Minn. 122;˙ Flentham v. Steward, 45 Nebr. 640; Payson v. Jacobs, 38 Wash. 203; Burke v. Ellis, 105 Tenn. l. c. 705, 706.]

*Suing Receivers.*

The rule of these cases is that in cases in which "there is no attempt to interfere with the actual possession of property which the receiver holds under the order of" the court which appointed him the jurisdiction of another court does.not depend upon leave to sue; that the jurisdiction of other courts is not ousted in such cases by the mere fact of the appointment of a receiver; that the appointing court may, in any proper

case, enjoin the suitor or proceed against him as for contempt, but that its jurisdiction of the receivership does not, of itself, deprive all other courts of all jurisdiction in every matter affecting the receiver and the property in his hands. In Railroad v. Smith, supra, BREWER, J., subsequently of the United States Supreme Court, held that though it be conceded a court appointing a receiver might draw to itself all controversies affecting the receivership property, it was not compelled to do so. It had the power to leave them to be determined by other courts of appropriate jurisdiction; that the "appointment does not, *ipso facto*, oust all other courts of their ordinary jurisdiction as to matters in which the receiver may be interested, or which affect the property placed in his hands; it simply secures to that court the power to control at its discretion all such controversies. It may assert its right to take to itself all such controversies, or it may leave them for determination where the parties may bring them. The jurisdiction of other courts remains unchanged; but it may reach parties and compel them to proceed nowhere else than in its own forum." The authorities and the cases therein cited show this rule is supported by the weight of authority in this country and is the rule in England.

In Barton v. Barbour, 104 U. S. 126, a divided court held that a receiver of a railroad, appointed by the courts of one State, could not be sued without leave in a court of another jurisdiction in an action for damages based on the receiver's negligence in operating the road; that the second court had no jurisdiction to entertain such a suit. The last paragraph limits the holding to the facts stated. [See Manker v. Loan Assn., 124 Iowa, 341.] This opinion has met with much criticism and but few courts have followed it. Some of these have subsequently overruled themselves and rejected the rule of that case.

(c) The fact that the receiver is one appointed by a Federal court and that the action is brought in a

Reed v. Railroad.

State court has not been thought to affect the question.
[Carter v. Rodewald, 108 Ill. 351; Railroad
v. Smith, 19 Kan. 1. c. 230, 231; Kinney v.
Crocker, 18 Wis. 1. c. 77, 78; Allen v. Railroad,
42 Iowa, 686 et seq.]

In State Court.

(d) Under the rule which we have stated is
supported by the weight of authority, it is clear the
receiver may waive the point of want of leave to sue
by appearing without objection and pleading
without raising the point and praying affirma-
tive relief. All these things the receivers did in this
case. [Flentham v. Steward, 45 Nebr. 640; Mulcahey
v. Strauss, 151 Ill. 1. c. 80, 81; Manker v. Loan Assn.,
124 Iowa, 341; Sligh v. Railroad, 20 Wash. 16; Pay-
son v. Jacobs, 38 Wash. 203; Southwestern Surety Ins.
Co. v. Casualty Co., 92 Wash. 654.]

Waiver.

(e) It is also held that voluntary appearance and
submission to jurisdiction raises a presumption of
leave to defend. [Manker v. Loan Assn.,
124 Iowa, 341; Carter v. Rodewald, 108 Ill.
351; Alsobrook v. Watts, 19 S. C. 1. c. 543.]

Presumption of Leave.

(f) The same doctrine of waiver is applied by
courts which take the view that want of leave is juris-
dictional. [Keen v. Breckenridge, 96 Ind. 69; Car-
works Co. v. Ellis, 113 Ind. 1. c. 216.] In the Ellis case
it was held that a receiver who "voluntarily
submitted to the authority of the court and
joined issue without objection" could not
raise the question. The rule was approved in In re
Young, 7 Fed. 855.

Waiver of Jurisdiction.

In Grant v. Buckner, 172 U. S. 1. c. 238, a
receiver appointed by a Federal court sued in a
state court to recover rent alleged to be due on prop-
erty in his hands. The tenant filed a setoff for over-
payments of rents of previous years and had judgment.
To the objection that such a setoff could not be allowed
by a State court in such circumstances, the Supreme
Court of the United States replied: "It is said in the
brief that the court first acquiring jurisdiction has a

right to continue its jurisdiction to the end. We fail to see the application of this. The receiver voluntarily went into the State court, and having voluntarily gone there cannot question the right of that court to determine the controversy between himself and the defendant. A similar proposition was often affirmed in cases of bankruptcy, although by Section 711, Revised Statutes, the courts of the United States are given exclusive jurisdiction 'of all matters and proceedings in bankruptcy.' [Mays v. Fritton, 20 Wall. 414; Winchester v. Heiskell, 119 U. S. 450, and cases cited in the opinion.] The same rule applies here. The question presented is not how the estate belonging to the receiver shall be administered, but what is the estate belonging to him. The two questions are entirely distinct.' "

The rule in bankruptcy proceedings, thus held applicable to suits against receivers, appears from the two cases the court cited. An examination of these cases becomes necessary.

(1) In 1862 Born executed a mortgage to Doll. Thereafter (January, 1868) he authorized the confession of judgment in favor of Fritton and judgment was fendered. In February, 1868, creditors instituted bankruptcy proceedings. Doll sold under his mortgage in July, 1868. Fritton appeared before the proper State tribunal and claimed her judgment was a lien on the surplus arising from the mortgage sale. The assignee in bankruptcy appeared by counsel and claimed the entire fund as part of the bankrupt's estate. Fritton denied this claim, and a jury returned a verdict in her favor. The State Supreme Court affirmed this judgment. The United States Supreme Court held that the question of the jurisdiction of the State court had not been raised below and was, therefore, not available. "The present was the case of the foreclosure of a mortgage under the State laws. The disposition of any surplus that might arise from a sale on such mortgage under a proceeding in the State courts prima-

facie belonged to the State courts. The subject-matter was within their jurisdiction and under their control. If special circumstances existed which altered that result, it was the duty of a party making such claim to state them and ask a ruling accordingly. Nothing of the kind was done in the present instance.

"To be available here an objection must have been taken in the court below. Unless so taken it will not be heard here. It is not competent for a party to assent to a proceeding in the court below, take his chance of success, and, upon failure, come here and object that the court below had no authority to take the proceeding. The point comes before us at every term and is always decided the same way." [Mays v. Fritton, 20 Wall. l. c. 418.]

(2) In the other case cited, Winchester v. Heiskell, 119 U. S. l. c. 453, the assignee in bankruptcy made the point of no jurisdiction before the referee and the State supreme court. No such point was made in the pleadings. It was held his appearance and litigation of his rights in the State court made the judgment binding.

It appears, therefore, that the rule of waiver in bankruptcy, held in Grant v. Buckner, supra, to be applicable in actions in which receivers are parties, is as broad as the rule announced in the decisions of the State courts above cited, and that under either rule it must be held, on the facts already stated, that the question of want of leave to sue was waived and cannot now be urged in this court. Haag v. Ward, 89 Mo. App. 186, and Smith v. Railway, 151 Mo. 391, in so far as they are out of accord with this view, are overruled.

(g) The court ordered that no execution issue and that the judgment be certified to the court which appointed the receivers. This leaves to the latter court its full power to direct the manner in which the judgment shall be rendered effectual. [Burke v. Ellis, 105 Tenn. 706.]

II. It is urged the action is barred. It was admitted by counsel for appellants that the ''railroad company has operated through passenger trains which were not scheduled to stop at Reeds as a regular stop; nor as a flag stop, and which do not, in fact, stop at Reeds as a regular stop, nor on flag, since prior to the year 1900.'' On the other hand, the respondents' evidence on the question showed that no one with any right to enforce such a demand had made any request that a train be stopped on signal and had that request refused by the company until a short time before this suit was brought. The mere fact that the company did not schedule its trains to stop on flag or that it would not have stopped them could not start the running of the statute. The company recognized other provisions of the deed in all respects until a short time before this suit was begun. Its intent, if it had such intent, to violate the covenant as to stopping trains, was not enough to start the statute. The judgment is affirmed. All concur, except *Bond, J.,* who dissents.