IN RE FRANK R. DAWLEY ET AL.

October Term, 1925.

Present:   WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed January 9, 1926.

*Habeas Corpus—Office of Writ—When Suit Against Receiver Constitutes Contempt—Courts—Right of Court to Retain Jurisdiction against Court of Concurrent Jurisdiction— Possession of Receiver That of Court—Interference With Receiver's Possession as Contempt—Extent to Which Possession of State Court Protected—Liability of Receiver— When Permission to Sue Receiver Necessary—Suit in Federal Court Against State Court Receiver as Contempt—*

*Right of State Court to Enjoin Interference With Its Re ceiver—Power of Supreme Court to Discharge Petitioners on Habeas Corpus Under G. L. 2243, although Lawfully Imprisoned.*

1. A writ of *habeas corpus* cannot be given effect of writ for correction of errors and irregularities, but proceedings under review, however irregular they may have been, will withstand writ, if court whose action is assailed has jurisdiction of subject-matter and the person, and renders such judgment or makes such order as it is authorized to render or make in that class of cases.

2. Writ of *habeas corpus* is available to one committed against law, as by one without jurisdiction of cause, or for a matter for which no one could lawfully be committed, and lack of authority to make a particular order or render a particular judgment has same effect as lack of jurisdiction of subject-matter.

3. Where leave to sue should first be secured, it is clearly a contempt of court appointing receiver to sue without such permission, and party so offending may be committed therefor.

4. Where property is actually in possession of one court of competent jurisdiction, such possession cannot be disturbed by process out of another court of concurrent jurisdiction.

5. Where court exercising jurisdiction in equity appoints a receiver to hold property of a corporation, possession of receiver is possession of court, held and administered through receiver as its officer, hence any person·intentionally interfering with such possession, without leave of court, necessarily commits a contempt of court, and is liable for punishment therefor.

6. Possession of property held by process issuing from state courts is protected from disturbance under process of courts of United States, excepting those cases wherein latter exercise jurisdiction for purposes of enforcing supremacy of Constitution and laws of United States.

7. A receiver, being an officer of the court, does not incur personal liability for acts done under and in conformity to order of court, but as to such acts is only liable in his official capacity, and actions against him as receiver are actions against receivership or funds in his hands.

8. Where demand against receiver arises from his wrongful act, and does not involve administration of receivership, or the action

is not calculated to interfere in any way with property being administered in court of chancery, he may be sued without prior permission of such court, but, if matter in dispute relates to property or property rights constituting part of such estate, it is for such court to say whether persons asserting claims against its receiver shall be permitted to enforce their rights by *actions in some other* tribunal.

9. Where receiver of corporation appointed by State court, under its authority, repaired and rebuilt a certain dam, which, together with land on which it was located, formed part of estate being administered by such court, suit to secure injunctive relief in federal court by persons claiming that in reconstruction of dam receiver had caused water of pond to overflow their lands because of dam being maintained at an unlawful height, *held* contempt of court appointing receiver, permission of such court to sue not having first been obtained.

10. In actions *in rem*, where jurisdiction of state court has first attached, a federal court is precluded from exercising its jurisdiction over the same *res* to defeat or impair state court's jurisdiction, and latter court, in order to protect its control of receivership property and maintain its exclusive jurisdiction thus acquired, may enjoin those within reach of its process, who without its permission seek to proceed in same matter in federal court.

11. Where petitioners for *habeas corpus*, who had been committed for contempt by state court of chancery having prior jurisdiction of receivership proceeding, for suing receiver without its permission in federal court, after rendition of opinion in Supreme Court on *habeas corpus*, holding that they were not unlawfully detained, complied with condition under which chancellor ordered they might purge themselves of contempt, by dismissing such federal suit, *held* that Supreme Court had authority under G. L. 2243, to discharge them from further imprisonment, it appearing that their offense was committed in good faith and under advice of counsel, and that such relief might be granted without impairing rights of parties concerned or due administration of law.

ORIGINAL PETITION of *habeas corpus* to the Supreme Court, Caledonia County, to secure discharge of relators, who had been committed to Caledonia county jail by chancellor for contempt.

Heard at the October Term, 1925.    The opinion states the case. *Relators held not illegally imprisoned, but discharged from imprisonment under G. L. 2243.*

*H. C. Shurtleff* for the petitioners.

No permission to sue a receiver personally in tort is necessary, and there is no contempt in so doing.   *Lyman* v. *Central Vermont R. R. Co.*, 59 Vt. 167, 111 Mass. 508, 15 A. R. 63; *Gutsch* v. *McIlhargey*, 69 Mich. 377; *Kenney* v. *Ranney*, 96 Mich. 617; *Kirk* v. *Kane*, 87 Mo. App. 274; *State ex rel. McClure*, 47 L. R. A. (N. S.) 755, and note; *T. & P. R. R. Co.* v. *Johnson*, 151 U. S. 100, 101, 38 L. ed. 88.

Suit brought by relators in federal court was not interference with any property in possession of receiver by order of court of chancery, and there is no presumption federal court will interfere with such property.   *Lion Bonding Co.* v. *Karatz*, 262 U. S. 89, 67 L. ed. 880; *Town of Bennington* v. *Fillmore & Slade*, 98 Vt. 405, 130 Atl. 137; *Morse* v. *Estate of Bruce*, 70 Vt. 378; *Capital Garage Co.* v. *Powell*, 96 Vt. 149; *Ward* v. *Ward*, 70 Vt. 430.

Right of relators to invoke jurisdiction of federal court is secured to them by the Constitution and laws of the United States, and cannot be impaired by authority of any state.   *Lion Bonding Co.* v. *Karatz, supra;* Story's Equity, § 900; *Bank of Bellows Falls* v. *Rutland & Burlington R. R. Co. et al.*, 28 Vt. 470, 477; Note, 11 A. & E. Ann. Cas. 744; *Ex parte Holman*, 28 Iowa, 88, 4 A. R. 168; *Moran* v. *Sturges*, 154 U. S. 256, 38 L. ed. 268; *United States* v. *City of Keokuk*, 73 U. S. 518, 18 L. ed. 918; *United States* v. *Council of Keokuk*, 73 U. S. 514, 18 L. ed. 933; *Mayor of Davenport* v. *United States ex rel. Lord*, 76 U. S. 414, 19 L. ed. 708; *Logan* v. *Lucas et al.*, 59 Ill. 237; *Terral* v. *Burke Construction Co.*, 257 U. S. 529, 77 L. ed. 352; *Donald* v. *P. & R. Coal & Iron Co.*, 241 U. S. 329, 60 L. ed. 1027; *Harrison* v. *St. L. & S. F. R. R. Co.*, 232 U. S. 328, 58 L. ed. 624.

The right to remove a suit to a federal court cannot be taken away, abridged, defeated, or limited by a state.   *Courtney* v. *Pradt*, 196 U. S. 90, 49 L. ed. 263; *Goldey* v. *Morning News*, 156 U. S. 518, 39 L. ed. 517; *Hess* v. *Reynolds*, 113 U. S. 73, 28 L. ed. 1027.

The jurisdiction of federal courts over controversies between

citizens of different states cannot be impaired by the laws of the states. *Chicot County* v. *Sherwood,* 148 U. S. 529, 37 L. ed. 546; *McClellan* v. *Carland,* 217 U. S. 281, 54 L. ed. 767; *Smythe* v. *Ames,* 169 U. S. 478, 42 L. ed. 838.

*Searles & Graves* for the receiver.

A person who brings an action in one court against a re ceiver appointed by another court without its consent is guilty of contempt of the latter court, and attachment may issue against him, unless he dismisses such suit. *Thompson, Receiver* v. *Scott,* 4 Dillon, 508, 23 Fed. Cas. 13975; *Hale* v. *Duncan,* 6 Reporter, 422, 11 Fed. Cas. 5914; *Barton* v. *Barbour,* 104 U. S. 126, 26 L. ed. 672; *Blumenthal* v. *Brainerd et al.,* 38 Vt. 402, 407; *Gay* v. *Hudson River Elec. Co.,* 182 Fed. 279; 13 C. J., p. 21; *Davis* v. *Gray,* 16 Wall. 203, 21 L. ed. 447; *Wiswall* v *Sampson,* 14 How. 52, 14 L. ed. 322; *Vermont & Canada R. R. Co.* v. *Vermont Central R. R. Co.,* 46 Vt. 792; *Lyman* v. *Central Vt. R. R. Co.,* 59 Vt. 167.

Writ of *habeas corpus* cannot be given the effect of a writ for the correction of errors or irregularities, and action of court of chancery having jurisdiction in committing relators for contempt, having been fairly exercised, cannot be reviewed on *habeas corpus.* *In re Dexter,* 93 Vt. 304, 310; *In re Turner,* 92 Vt. 210, 214; *In re Consolidated Rendering Co.,* 80 Vt. 55, 63, 207 U. S. 541, 52 L. ed. 327; *In re Jesse Cooper,* 32 Vt. 258; *In re Fitton,* 68 Vt. 297, 300; *Ex parte Savin,* 131 U. S. 267, 33 L. ed. 150; *Tinsley* v. *Anderson,* 171 U. S. 101, 43 L. ed. 91; 29 C. J. 96.

Property in hands of receiver, being in custody of court, receiver is not amenable to suit in respect to such property, except with consent of court appointing him. 34 Cyc. 411; *Porter* v. *Sabin,* 149 U. S. 473, 37 L. ed. 815; *Davis* v. *Gray,* 16 Wall. 203, 21 L. ed. 447.

Liability of receivers for their acts in management of property placed in their custody as such is official, and not personal. Tardy's Smith on Receivers, p. 208, § 48; *Ibid.,* p. 214, § 52; Clark on Receivers, § 274; *McNullra* v. *Lockridge,* 141 U. S. 327, 332, 35 L. ed. 796; *Texas & P. Ry. Co.* v. *Cox,* 145 U. S. 601, 36 L. ed. 829; *Atlanta Trust Co.* v. *Chapman,* 208 U. S. 375, 52 L. ed. 528; *Archambeau* v. *Platt,* 173 Mass. 250, 53 N. E. 816.

TAYLOR, J.   This is a petition for a writ of *habeas corpus.* The relators were committed to Caledonia county jail by order of Chancellor Thompson in a cause in chancery pending before him, entitled *Bank of America of New York, Trustee* v. *Eastern Vermont Public Utilities Corporation,* for contempt in refusing to comply with an order of court made therein.   This proceeding is brought to test the validity of the order of commitment.   The Court not being in session at the time, the jailer made his returns of the writ to one of the Justices thereof, as therein directed, who continued the hearing to the October Term of the Court, and ordered that the relators be released from custody in the meantime upon condition that they take no further action in the suit pending in the federal court hereinafter referred to until the merits of the writ should be determined.

The material facts of record are these:   The cause referred to above is a receivership proceeding in which E. Bertram Pike of Haverhill, New Hampshire, is receiver.   One object of the bill was the foreclosure of a mortgage on the property of the defendant corporation.   Included in the property in his hands as such receiver are four hydro-electric plants on Wells River and a tract of land at the outlet of Groton Pond, the source of said river, on which is a dam used to control the flow of water from said pond.   Pursuant to an order of the court of chancery the receiver has caused necessary repairs to be made on the dam to put the same in condition for the purpose of operating the properties in the receivership.   The relators are the owners of certain improved real estate, with buildings thereon, bordering on said pond.   While the receivership was still pending, the relators as plaintiffs filed a bill in equity in the United States court for the District of Vermont against said Pike, complaining, in substance, that he had erected and maintained the aforesaid dam in disregard of their rights, by means of which he had set back and raised the water in said pond to their damage.   The bill prayed for the assessment of the damages and that said Pike, his agents, servants, and assigns, be permanently enjoined from flowing the relators' lands.   The suit in the federal court was instituted without first obtaining or seeking the permission of the State court of chancery.

Having been cited to defend said bill in equity, on July 11, 1925, the receiver made complaint in writing to the chancellor of the action of the relators in bringing the suit without permission

of the court of chancery. Among other things he set out at length in the complaint his appointment as receiver and his subsequent possession and control of the receivership property under the direction and authority of the court; that included in the property of which the court had assumed jurisdiction and control was the dam in question; that on his application, representing that such dam was badly in need of repairs, the court authorized the rebuilding thereof; that pursuant to such authority he had caused necessary repairs to be made on the dam, but that no repairs had been made which raised the height of the dam or caused it to hold back the water of the pond, or to flood the lands of any person more than they had formerly been flooded, nor more than he had a right as such receiver to flow them. The complaint further charged that in violation of the court's order enjoining all persons from interfering with the possession, control, and management of the properties in the hands of the receiver, the relators had brought the bill in equity referred to above; that the attempt of the relators thus to obtain an injunction, as sought in their bill in equity, and for the collection of money damages, was such an interference with the receiver's possession, control, and management of the receivership properties, expecially of the dam in question, as to constitute a contempt of court.

The relators were cited to appear before Chancellor Thompson on the 29th day of July, 1925, to show cause why they should not be punished for contempt. They appeared as directed, and made answer to the receiver's complaint in substance as follows: They alleged that they were not parties to the receivership proceeding, have no interest in the same, are not bound thereby, and that none of them knew of the orders made in that cause; that they have not interferred, and do not intend to interfere with the receiver's lawful custody of the receivership property or his rights therein, but that they do intend to hold the receiver personally responsible for flowing their lands, as evidenced by their bill in equity brought in the district court. Relators demurred to the allegation that they had brought the bill in equity without first obtaining permission of the chancellor appointing the receiver, on the ground that such permission was not required. They charged that the petition for contempt was an attempt to prevent their exercising their rights under the Constitution and laws of the United States, and further de-

murred for that the chancellor was lacking jurisdiction to penalize them for invoking the jurisdiction of the United States court, or to hinder or delay orderly procedure in their action pending therein.

While the hearing on the petition for contempt was pending, the relators filed a supplemental bill in the district court reciting the proceedings subsequent to the bringing of their original bill, including the application to the chancellor to have them adjudged in contempt. The purpose of the supplemental bill was to secure an injunction to restrain said Pike from taking any further action in the matter of the petition for contempt, from interfering with the orderly procedure and trial of the suit pending in that court by any suit under authority of the State of Vermont, and from attempting to penalize the relators or any of them in any action in the courts of the State for bringing or maintaining the suit pending in the district court. This application for a temporary restraining order was brought on for hearing July 27, 1925. Judge Howe denied the application, observing that as a matter of comity he could not assume on the facts alleged that the court of chancery would interfere with the jurisdiction of the district court or penalize parties for invoking its jurisdiction.

The contempt proceeding came on for hearing at the appointed time, the parties appearing in person and by their solicitor. After hearing evidence and arguments, the chancellor adjudged that the facts stated in the petition were true, and that each of the relators was guilty of a contempt of the court of chancery by instituting, without the permission of said court, the suit in the United States District Court against the receiver appointed by the court. Among other things it was found that the suit in the federal court was instituted for the purpose of enjoining said Pike, his agents, servants, and assigns, from flowing the lands claimed by the said petitionees (the relators) by means of the dam ''located on and forming a part of the real estate under the custody, control, and management of this court, the height of which dam was claimed by the petitionees to be unlawful, and for the purpose of holding said receiver personally responsible for flowing and flooding the lands claimed by the said petitionees, by means of said dam, so in possession, control and management of this court.'' The chancellor continued the proceedings until August 3, 1925, to give the relators an oppor-

tunity to purge themselves of the contempt by discontinuing the suit in the district court. It appearing at the time to which the matter was continued that the relators had each neglected to purge himself of the contempt in the manner specified, the chancellor then adjudged that they were still in contempt of court, and thereupon sentenced each of them to be confined in Caledonia County jail, or such other jail as the law directs, until each should purge himself of his contempt by entering his discontinuance of the suit in the district court, or until he should be otherwise discharged according to law. Thereupon a warrant was issued, and the relators were thereon duly arrested and com mitted to jail, which is the confinement from which they seek to be relieved.

[1, 2]   The doctrine is well settled that the writ of *habeas corpus* cannot be given the effect of a writ for the correction of errors and irregularities. The proceedings under review, however irregular they may have been, will withstand the writ, if the court whose action is assailed has jurisdiction of the subject-matter and the person, and renders such a judgment or makes such an order, as, in the circumstances, it would be authorized to render or make in cases of that class. But if one be committed against the law, as by one without jurisdiction of the cause, or for a matter for which no one could lawfully be committed, he may avail himself of the writ. *In re Hook,* 95 Vt. 497, 503, 115 Atl. 730, 19 A. L. R. 610, and cases there cited; *In re McAllister,* 97 Vt. 359, 123 Atl. 207. Lack of authority to make a particular order or render a particular judgment has the same effect as lack of jurisdiction of the subject-matter. *In re Estate of Wooley,* 96 Vt. 60, 63, 117 Atl. 370.

[3]   It follows that the order committing the relators is beyond the reach of this proceeding, if, in the circumstances shown, the chancellor had authority to make it. It cannot be seriously contended that commitment for contempt is not authorized in case of failure of a party to obtain leave of the court to sue a receiver appointed by it, in cases where such leave is properly required. The question does not appear to have arisen in this State, relief by injunction having generally been resorted to; but, in a case where leave to sue should first be secured, it is clearly a contempt of the court appointing the receiver to sue without such permission. *Fox River Paper Co.* v. *Western Envelope Co.,* 109 Ill. App. 393; *Chautauque County Bank* v.

*Risley,* 19 N. Y. 369, 75 A. D. 347; *Reed* v. *St. Louis & S. F. R. R. Co.,* 277 Mo. 79, 209 S. W. 892; *Pruyn* v. *McCreary,* 105 App. Div. 302, 93 N. Y. S. 995; *Home Ins. Co.* v. *Howell,* 24 N. J. Eq., 238; *Kinney* v. *Crocker,* 18 Wis. 74; *St. Joseph & D. C. R. R. Co.* v. *Smith,* 19 Kan. 225; *Davis* v. *Gray,* 16 Wall. 203, 21 L. ed. 447, 452; 2 Story's Eq., § 833a; *Kneisel* v. *Ursus Motor Co.,* 316 Ill. 336, 147 N. E. 243, 39 A. L. R. 1; *Mulcahey* v. *Strauss,* 151 Ill. 76, 37 N. E. 702. For additional cases, see 23 R. C. L. 64, n. 12, 13 C. J. 22, n. 18; note, 39 A. L. R. 6.

The relators rely upon *Lyman* v. *Central Vermont R. R. Co.,* 59 Vt. 167, 10 Atl. 346, in support of the proposition that permission to sue a receiver personally in a tort action is not necessary. Upon examination it will be found that this case and our earlier decisions on which it is based do not go to the extent claimed. It is interesting to notice that all of our cases dealing with the subject relate to the receiverships of a single railroad. The first of the series was *Blumenthal* v. *Brainerd,* 38 Vt. 402, 91 A. D. 349, which was a suit at law for the loss of freight shipped over the Vermont Central Railroad. The defendants were operating the road as receivers appointed by the court of chancery. They claimed that as such receivers they were accountable only to the court appointing them, and were entitled to its protection and judgment in all matters growing out of the performance of their duties as such receivers, and so could not be made liable in that action as common carriers or as warehousemen. In discussing the question, it was said that a court of chancery will protect a person acting under its authority in the execution of a decree or order against suits at law, and will compel parties to apply to it for relief; that this protection is accorded by the court to its officers only on their own application; and that the relief will be granted by the chancellor in the exercise of his discretion, which it is to be presumed would be granted in any case proper for such relief. The point decided was that the mere fact the defendants were acting as receivers was not a defense to a suit at law for the breach of a duty voluntarily assumed in matters of business conducted by them while so acting; that the assumption by the defendants of the peculiar duties and extraordinary responsibilities arising from the relation of common carriers was not to be considered as incompatible with any duty or responsibility imposed upon them as receivers. *Sprague* v. *Smith,* 29 Vt. 421, 70 A. D. 424, is cited as authority

for the proposition. In that case the question was whether the defendants, who were operating the Vermont Central Railroad as trustees of the holders of its mortgage bonds, were personally liable for the negligence of the operatives of the road resulting in an injury to the plaintiff. It was held that, being in independent control of the road, the defendants were liable to the same extent as the company would otherwise have been. The liability of persons acting as receivers was not there involved.

*Morse* v. *Brainerd,* 41 Vt. 550, was an appeal in chancery. The plaintiff had originally brought an action at law against the defendants as common carriers for damages on a shipment of cattle. The suit was enjoined by the chancellor on the ground that it was sought to charge the defendants in a court of law ''for acts done by them as receivers, acting as officers of the court of chancery under the direction and control of that court, and as such only accountable in a court of chancery.'' Thereupon, the plaintiff applied to the chancellor for the appointment of a special master to hear his claim. The case was heard in this Court on an appeal from a decree accepting the master's report and determining the amount of plaintiff's recovery. The review did not extend to the preliminary proceedings. *Cutts* v. *Brainerd,* 42 Vt. 566, 1 A. R. 353, was an action of assumpsit on a contract of carriage. No question was made respecting the propriety of suing the defendants as receivers in an action at law. *Newall* v. *Smith,* 49 Vt. 255, was an action of assumpsit against the same defendants, who were sued as common carriers. The referee reported that the defendants were operating the railroad in question in the usual way of operating railroads, acting as receivers appointed by the court of chancery. The point was made that the defendants were not personally liable on any contract made in the performance of their duties as receivers, and that plaintiff's remedy, if he had a cause of action, was by application to the court of chancery having charge of the roads. The Court observed that the defendants might at all times invoke the aid of the court of chancery in any matter affecting their duty or liability under their trusteeship; but held that, waiving this, they were amenable in the common law courts to actions for negligence as carriers. *Blumenthal* v. *Brainerd, Morse* v. *Brainerd,* and *Cutts* v. *Brainerd* were cited as authority for this doctrine.

In *Lyman* v. *Central Vermont R. R. Co.,* 59 Vt. 167, 10 Atl

346, the question was raised whether the plaintiff could maintain an action at law without permission of the court of chancery against the receiver of a railroad for injuries resulting from the negligence of the receiver's servants in operating the road. The question arose on defendant's plea setting up that the railroad was being operated by the defendant as receiver under the order of the court of chancery. The defendant relied upon the plea as a plea to the jurisdiction of the court, claiming that the court appointing the receiver had sole jurisdiction of the cause of action. It is necessary to a proper understanding of the case to keep the precise question for decision in mind. The court announced that it was already committed to the doctrine that having assumed the character of a common carrier of freight and passengers the receiver would be answerable for its torts in the management of the road to the same extent as the corporation itself. The opinion reviews the cases relating to the question of jurisdiction, and adopts the view generally held that the objection relied upon did not go to the jurisdiction of the common-law court. It was said that the defense set up under the plea "was of an equitable character that did not bar all remedy, but referred it to an equitable forum for enforcement"; that the defense was one that the receiver could make only by invoking the interference of the court of chancery with the party prosecuting him in the common-law court. The rule was reaffirmed that the intervention of the court of chancery is exerted only on the receiver's call for it. The distinguishing characteristics of a case warranting interference by the chancellor are thus expressed: "So long as he holds the property impounded by the receivership, and administers upon it for the purposes for which he was appointed, so far he is a receiver in the true essence and spirit of the office, and as such is entitled to absolute immunity and protection. When he takes on another character without the scope of his appointment and outside the tenor of the decree creating the receivership, he necessarily takes upon himself the burdens, liabilities, and responsibilities incident to the business he assumes. And these liabilites are enforceable in the common law courts."

The latest decision touching the subject is *Town of Roxbury* v. *Central Vermont R. R. Co.*, 60 Vt. 121, 14 Atl. 92. This was an action at law to recover the amount of a judgment which had been rendered against the town for an injury to a traveler upon

a highway. The insufficiency in the highway was the want of a railing at the sides of a fill constituting an approach in the highway to a crossing on the railroad which the defendant was operating as a receiver under the order of the court of chancery. The question arose on a demurrer to the declaration, the claim being that the declaration was insufficient in that it did not allege that leave to bring the suit was obtained of the court of chancery, because of which the court was without jurisdiction. The point was dismissed without discussion on the authority of the Lyman case, which was held to be controlling.

[4, 5]   It should be noticed that in none of these cases, except *Morse* v. *Brainerd,* had the receivers invoked the interference of the court of chancery. Moreover, the court seems to have attached special significance to the fact that the receivers were engaged in the business of common carriers. The doctrine of the cases is that the receiver of a railroad occupies the same position with respect to duty and liability as the railroad company would if it were operating the road itself. The argument is that conducting the business of a common carrier involves peculiar duties and extraordinary responsibilities. *Blumenthal* v. *Brainerd, supra.* The questions decided were that failure to procure leave to prosecute the suit does not affect the jurisdiction of the court of law; that such failure is not available as a defense to an otherwise legal action; and that the protection of the court of chancery is accorded only on the application of the receiver himself. The cases plainly indicate the view that, touching any matter within the scope of the receivership, application should be made to the court appointing the receiver for permission to sue him in another court, in order that the court having control of the receivership may determine whether the case is one proper for relief in the other tribunal. In these respects our decisions accord with the views generally accepted by the courts of this country. See note, 29 A. L. R. 1460, where the cases are reviewed. The question now raised was not for decision, and was referred to only incidentally. The doctrine is firmly established that where property is actually in the possession of one court of competent jurisdiction, such possession cannot be disturbed by process out of another court of concurrent jurisdiction. *Ex parte Chetwood,* 165 U. S. 443, 460, 41 L. ed. 782, 788, 17 Sup. Ct. 385; *Moran* v. *Sturges,* 154 U. S. 256, 38 L. ed. 981, 14 Sup. Ct. 1019. It is equally well settled that,

when a court exercising a jurisdiction in equity appoints a receiver to hold the property of a corporation, it assumes the administration of the estate; that the possession of the receiver is the possession of the court; that the court itself holds and administers the estate through the receiver as its officer; and that in such circumstancés, if any person without leave of the court intentionally interferes with such possession, he necessarily commits a contempt of court and is liable for punishment therefor. *Ex parte Chetwood, supra.* See *Underhill* v. *Rutland R. R. Co.,* 90 Vt. 462, 471, 98 Atl. 1017. An excellent statement of these principles is to be found in the opinion of Chancellor Royce on a petition for an injunction to restrain the prosecution of certain creditors' suits in connection with the Vermont Central Railroad receivership, 46 Vt. 792.

In view of the claim that the right of the relators to invoke the jurisdiction of the district court is secured to them by the Constitution and laws of the United States, and cannot be impaired by any state authority, the pronouncements of the Federal Supreme Court are specially pertinent. It is said in *Porter* v. *Sabin,* 149 U. S. 473, 37 L. ed. 815, 13 Sup. Ct. 1008, that it is for the court appointing the receiver, in its discretion, to decide whether it will determine for itself claims against the receiver, or will allow them to be litigated elsewhere; and that, unless expressly authorized by statute, no suit can be brought against the receiver without the permission of the court that appointed him. In this connection the Court said: "The reasons are yet stronger for not allowing a suit against a receiver appointed by a state court to be maintained, or the administration of that court of the estate in the receiver's hands to be interfered with, by a court of the United States, deriving its authority from another government, though exercising jurisdiction over the same territory. * * * Until the administration of the estate has been completed and the receivership terminated, no court of one government can by collateral suit assume to deal with rights of property or of action, constituting part of the estate within the exclusive jurisdiction and control of the courts of the other."

[6] The rule repeatedly affirmed by the Federal Supreme Court is that the possession of property held by process issuing from state courts is protected from disturbance under process of the courts of the United States, excepting those cases wherein the latter exercise jurisdiction for the purposes of enforcing the

supremacy of the Constitution and laws of the United States. The principle applicable to the courts of both jurisdictions is that when property is taken and held under process of a court it is in the custody of the law and within the exclusive jurisdiction of the court from which the process has issued; that to disturb that possession would be to invade the jurisdiction of the court by whose command it is held. *Moran* v. *Sturges,* 154 U. S. 256, 274, 38 L. ed. 981, 987, 14 Sup. Ct. 1019.   These principles are reaffirmed in *Wabash R. R. Co.* v. *Adelbert College,* 208 U. S. 39, 54, 52 L. ed. 379, 386, 28 Sup. Ct. 182, where many cases are collected.   It is there held that, when a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts; that the latter courts, though of concurrent jurisdiction, are without power to render any judgment which invades or disturbes the possession of the property while it is in the custody of the court which has seized it; that such court, during the continuance of its possession, has jurisdiction to hear and determine all questions respecting the title, the possession or the control of the property.   These principles are not peculiar to the relations of the courts of the United States to those of the states, but are of general application, and are not based upon any supposed superiority of one court over the others, but serve to prevent a conflict which would be unseemly and subversive of justice.   To the same effect is *Bonding & Surety Co.* v. *Karatz,* 262 U. S. 77, 89, 67 L. ed. 871, 880, 43 Sup. Ct. 480.   In *Buck* v. *Colbath,* 3 Wall, 334, 341, 18 L. ed. 257, 260, Mr. Justice Miller declares that this principle is essential to the dignity and just authority of every court, and to the comity which should regulate the relations between all courts of concurrent jurisdiction.   He says: "A departure from the rule would lead to the utmost confusion, and to endless strife between courts of concurrent jurisdiction deriving their powers from the same source; but how much more disastrous would be the consequences of such a course, in the conflict of jurisdiction between courts whose powers are derived from entirely different sources, while their jurisdiction is concurrent as to the parties and the subject-matter of the suit." The federal cases distinguish suits not interfering with the possession and control of the property in the hands of the receiver, holding that a party may pursue such a remedy in any tribunal,

state or federal, having jurisdiction of the parties and the subject-matter. *Moran* v. *Sturges, supra.* However, the rule is adhered to that a court will not allow its receiver to be sued touching the property in his charge, nor for any malfeasance relating thereto, without its consent, but will vindicate its authority, and, if need be, punish the offender for contempt. *Davis* v. *Gray*, 16 Wall. 203, 21 L. ed. 447, 452. It is also held that the rule forbidding any interference with the property in the course of administration in the court of chancery is not confined to acts of interference with the specific property actually in the posession of the receiver, but would extend to suits to recover damages when the judgments therein would be chargeable to the receivership funds. *Barton* v. *Barbour*, 104 U. S. 126, 26 L. ed. 672.

[7] As already intimated, the rule that leave to sue a receiver must be obtained of the appointing court has its limitations. Doubtless, if a receiver does something outside of his duties as such, or takes possession of property which the court has not authorized him to do, he cannot claim protection against a suit on account of such misconduct. The object of the rule is to give the court full control of the property of which it has taken possession through its officer, and not to protect the receiver when acting outside the orders of the court and interfering with the property rights of individuals. Being an officer of the court, a receiver does not incur personal liability for acts done under and in conformity to the order of the court. For such acts he is only liable in his official capacity, and actions against him as receiver are actions against the receivership or the funds in his hands. *Texas, etc., R. R. Co.* v. *Cox*, 145 U. S. 593, 36 L. ed. 829, 12 Sup. Ct. 905; *McNulta* v. *Lochridge*, 141 U. S. 327, 35 L. ed. 796, 12 Sup. Ct. 11; 34 Cyc. 408. It is the undoubted rule that a person acting as a receiver can be sued only by leave of the court appointing him for acts as to which he is not liable personally. On the other hand, if a receiver wrongfully assumes to take and hold property not embraced in the order of appointment, or forcibly to take property from a stranger, he is not then acting as the officer of the court, but is a more trespasser, and the rightful owner of the property may sue him for damages, or to recover possession of the property illegally taken or detained, and he will not be accorded the protection of the court appointing him. The following are some of the decisions in point: *Brooke* v. *Kettler*, 166 Ala. 76, 82, 51 So. 940; *Hills* v.

*Parker,* 111 Mass. 508, 15 A. R. 65; *Kirk* v. *Kane,* 87 Mo. App. 274; *Hetzel* v. *Fadner,* 162 Ill. App. 639; *Gutsch* v. *McIlhargey,* 69 Mich. 377, 37 N. W. 303; *Kenney* v. *Ranney,* 96 Mich. 617, 55 N. W. 982; 1 Clark on Receivers, § 713; Black on Receivers, § 257; High on Receivers, § 307, pp. 311, 652-654; 34 Cyc. 410.

[8]   Speaking generally, if the demand against the receiver arises from some wrongful act of his, and does not involve the administration of the receivership, or the action is not calculated to interfere in any way with the property being administered in the court of chancery, he may be sued personally without prior permission of the court.   23 R. C. L. 126; note, 74 A. S. R. 289. But if the matter in dispute relates to the property or property rights constituting a part of such estate, it is for that court to say whether persons asserting claims against its receiver shall be permitted to enforce their rights by actions in some other tribunal. *American Steel & Wire Co.* v. *Bearse,* 194 Mass. 596, 80 N. E. 623; *Palys* v. *Jewett,* 32 N. J. Eq. 302; *Gunning* v. *Sorg,* 214 Ill. 616, 73 N. E. 870; *Kneisel* v. *Ursus Motor Co.,* 316 Ill. 336, 147 N. E. 243, 39 A. L. R. 1; *Pierson* v. *Pierson Eng. & Con. Co.,* 92 Conn. 96, 101 Atl. 485; *Chalmers* v. *Littlefield,* 103 Me. 271, 69 Atl. 100; *Carney* v. *Averill,* 110 Me. 172, 85 Atl. 495. It is said in the case last cited that leave to sue must be obtained though the party asserts a paramount title.   It should not be overlooked that the rule given in some of the cases is affected by statute.   A federal act authorizes suits against receivers of any property appointed by a court of the United States "in respect of any act or transaction of his in carrying on the business connected with such property" without previous leave of the appointing court, reserving to that court general equity jurisdiction "so far as the same shall be necessary to the ends of justice."   Some of the states have similar enactments.   Under such statutes it is generally held that previous leave of the appointing court to sue the receiver is necessary only when the suit involves the actual custody or control by the receiver of the property, or part of the property, of which he is in possession or control as such receiver. *Railroad Comr's.* v. *Alabama G. S. R. R. Co.,* 185 Ala. 354, 64 So. 13, L. R. A. 1915D, 98.   The federal statute was construed in *McNulta* v. *Lochridge,* 141 U. S. 327, 35 L. ed. 796, 12 Sup. Ct. 11, where it was held that it was not intended by the words, "any act or transaction of his," to limit the right to sue to cases where the cause of action arose from the

conduct of the receiver himself, but that, with respect to the question of liability, he stood in the place of the corporation. We have no statute touching the matter, and the question here is unaffected by the federal statute, as the receiver was not appointed by a United States court.

[9, 10]    The test to be applied in the case at bar is whether it conclusively appears from the record that the suit brought by the relators is such an action as under the rule stated above they are entitled to maintain without permission of the court appointing the receiver. It must be held that the relators have failed to make a case entitling them to the relief sought. In his findings the chancellor has stated the issue involved in the relators' suit against the receiver. In brief, it is whether the dam at the outlet of the pond as now constructed is being maintained at an unlawful height. No question is made but that the dam and the land on which it is located form a part of the estate being administered in the court of chancery. The dam was repaired or rebuilt by the receiver under authority from the court. The gist of the relators' complaint is that in the reconstruction of the dam the receiver has caused the water of the pond to overflow their lands. However, their right to recover against him depends entirely upon the question whether the dam is being maintained at an unlawful height. The receiver insists that the injunctive relief sought amounts to an attempt to interfere with the control of the receivership property, and manifestly so it is. Relators undertake to avoid this conclusion by saying they only ask that the receiver be restrained from flowing their lands, which are not in his possession; and that they have no complaint as to the height or other qualities of the dam, if the flowing of their lands is stopped. Means are even suggested by which the water could be lowered without interfering with the dam. The argument is ingenuous, but not convincing. The real issue is whether the Utilities Corporation has the right of flowage created by the dam as it is being maintained. The right to obstruct the outlet of the pond by the dam necessarily carries the right to the flowage occasioned thereby. Attention is called to *Town of Bennington* v. *Fillmore & Slade,* 98 Vt. 405, 130 Atl. 137. In the circumstances of that case the height of the dam was not the controlling feature. The statement that the maintenance of a dam at a given height is no invasion of another's rights until damage is occasioned thereby is not pertinent to the instant

case. That principle would apply to the question of title by adverse possession, but would not divorce the right of flowage from the right to maintain the dam, when such right has been acquired.

The relators invoke the rule that state courts are forbidden to enjoin proceedings in the courts of the United States. We will assume for the sake of the argument that the authority of the court to punish the relators for the contempt charged is subject to the same restriction as its authority to enjoin the relators from prosecuting the suit in the federal court. The end sought in both cases would be the same. The rule that state courts cannot enjoin proceedings in the courts of the United States, nor the latter in the former, is an exception to the general doctrine that, as between courts of concurrent jurisdiction, the court which first obtains jurisdiction of a cause retains it to the exclusion of other courts, and to protect such jurisdiction may enjoin persons within reach of its process from prosecuting suits either in the courts of its own state or of other states. *Bank of Bellows Falls* v. *Rutland & Bennington R. R. Co.*, 28. Vt. 470, 477; *Vermont & Canada R. R. Co.* v. *Vermont Central R. R. Co.*, 46 Vt. 792, 797; 7 R. C. L. 1070, § 108; 14 R. C. L. 419, §§ 122, 123; note, 24 A. L. R. 1084. The rule invoked is a familiar rule of comity between state and federal courts, but it is limited in its field of operation. The federal statute forbidding the issue of an injunction to stop proceedings in any state court, except in cases where such injunction may be authorized in bankruptcy proceedings, is intended to give effect to this rule. It has been settled by repeated decisions of the Supreme Court of the United States that the statute does not prevent the federal courts from maintaining and protecting their own jurisdiction by enjoining attempts to impair or defeat it through proceedings in a state court. *Wells Fargo & Co.* v. *Taylor*, 254 U. S. 175, 65 L. ed. 205, 41 Sup. Ct. 93, and cases there cited.

The relators place special reliance upon statements found in *Moran* v. *Sturges*, 154 U. S. at p. 268, 38 L. ed. p. 985, 14 Sup. Ct. 1019. The quoted portion of the opinion is but the statement of the general rule. Elsewhere the opinion recognizes the exception to the rule which we are considering. The decision that the injunction issued by the state court in that case was an unlawful interference with the proceedings in the federal court was based upon the fact that the latter court had obtained juris-

diction of the property involved in priority to the state court. The conclusions reached by the Court are not in conflict with the decisions which uphold the authority of the state court to protect its control of the receivership property, of which it undoubtedly had exclusive jurisdiction. The limitation of the general rule is pointed out in *Kline* v. *Burke Construction Co.,* 260 U. S. 226, 67 L. ed. 226, 43 Sup. Ct. 79, 24 A. L. R. 1077. It is there said: "It is settled that where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court. Where the action is *in rem* the effect is to draw to the federal court the possession or control, actual or potential, of the *res,* and the exercise by the state court of jurisdiction over the same *res* necessarily impairs, and may defeat, the jurisdiction of the federal court, already attached. The converse of the rule is equally true—that where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same *res* to defeat or impair the state court's jurisdiction * * *. But where the action first brought is in personam, and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded." It is pointed out that the test is the necessity, actual or potential, for action to protect the court's jurisdiction—where the necessity does not exist the rule forbidding interference by injunction would apply, and *vice versa.* Since that necessity does exist in actions *in rem,* and does not exist in actions involving personal liability only, the rule is held to apply in the former but not in the latter. Approval of the practice by the Supreme Court of the United States is found in *State of Oklahoma* v. *State of Texas,* 265 U. S. 490, 68 L. ed. 1116, 44 Sup. Ct. 607, wherein that court enjoined the prosecution of an action in a state court against one appointed by it as receiver.

The fact that the receiver was sued personally and not in his official capacity would not affect the result. It fairly appears from the record that the acts complained of were performed while acting in his official capacity and in pursuance of his official duty. Accordingly the action should be treated as against him as receiver. *French* v. *Kemp* (Mass.), 148 N. E. 442. The rule requiring the relators to apply to the state court

does not deprive them of any substantial right. They are not seeking a remedy in a court of law, and the equity jurisdiction of the court which is administering the receivership is coextensive with that of the federal court. It is specially appropriate that application for equitable relief in the premises should be made to the court which already has jurisdiction of the property involved. See *Porter* v. *Kingman,* 126 Mass. 141.

[11] After the foregoing opinion was promulgated the relators deposited with the clerk of this Court, to be forwarded to the clerk of the federal court for filing, directions in writing signed by them discontinuing their action against the receiver. Thereupon they invoked the relief afforded by G. L. 2243. The relators have now complied with the condition under which the chancellor ordered that they might purge themselves of the contempt. It sufficiently appears that the offense was committed acting in good faith under the advice of counsel and that relief may be granted without impairing the rights of the parties concerned or the due administration of law. It follows that the case comes within the purview of the statute, which authorizes this Court in such circumstances to discharge one confined for a contempt of court upon such terms as seem just. See *In re Cooper,* 32 Vt. 258.

*Although it is found that the relators are not illegally deprived of their liberty, it is adjudged pursuant to G. L. 2243 that they be discharged from their imprisonment upon payment of the taxable costs of this proceeding.*